## The People on the relation of William H. Fennell v. The Common Council of Bay City.

*Fines: By-laws: Bay city: County treasury.*   Fines collected by the city authorities of Bay City on prosecutions before the recorder for viola-tions of city by-laws do not belong in the county treasury.

*Penal laws defined: Fines: Constitutional law.*   The term "penal laws" in the constitutional provision (*Art. XIII., § 12*), requiring all fines assessed and collected in the several townships for any breach of the penal laws to be exclusively applied to the support of libraries, refers to the laws of the state for the preservation of public order and which are enforced by the state authorities; and this provision does not extend to the numerous forfeitures and penalties growing out of breaches of duty that partake of the nature of a civil grievance or a merely local wrong, and which do not come within the category of criminal conduct.

*City by-laws: Penalties: Disposition of proceeds.*   And all penalties which are fixed by and imposed under the city by-laws stand on the same foot-ing in regard to the disposition of the proceeds; and the circumstance that like offenses are punishable also under state legislation, whether identically or otherwise, does not affect the question under considera-tion.

*Fines: Police court of Detroit: State offenses.*   These fines are distinguish-able from those collected by the police court of Detroit, which was a creature of the statute, having no jurisdiction to impose any penalties but those defined by the law itself; its authority being distinctly stat-utory and the penalties being neither imposed nor governed by ordi-nances.

*Heard January 19.   Decided April 10.*

Application for *mandamus*.

*G. M. Wilson, T. A. E. Weadock* and *Hatch & Cooley*, for relator, cited: *Constitution, Art. XIII., § 12*, and referred to the several sections of the charter of Bay City bearing upon the question, and argued that the moneys in question are fines: See *2 Bouv. Dic., 526; Webster's Dic.;* that the offenses for which they are imposed are violations of penal laws and are many of them crimes under the state laws: *Comp. L. 1871, §§ 1960, 8175, 7700, 2138; Laws of 1875, p. 284, § 2;* that the procedure by which the punishment is inflicted is after the analogy of criminal cases, and so is the character of the punishment, by fine and imprisonment; that penal statutes are those which inflict a penalty for the violation of some of their provisions: *2 Bouv. Dic., 323;* that the prosecution under the ordinances is a criminal prosecution, and if so would be a bar to a prose-cution for the same offense under the general statutes: *Cooley*

FENNELL *v.* COMMON COUNCIL OF BAY CITY.

*Const. Lim., 199; Levy v. State, 6 Ind., 281; Blatcherly v. Moser, 15 Wend., 215; Rogers v. Jones, 1 Wend., 237; People v. Stevens, 13 Wend., 341; Brooklyn v. Toynbee, 31 Barb., 282; New York v. Hyatt, 3 E. D. Smith, 156; State v. Crummy, 17 Minn., 72; State v. Cowan, 29 Mo., 330;* and see *Fox v. State of Ohio, 5 How., 410; Moon v. People, 14 How., 13; U. S. v. Marigold, 9 How., 560; State v. Welch, 36 Conn., 215; Davenport v. Bird, 34 Iowa, 524; Jones v. Fireman's Ins. Co., 2 Daily, 307;* that as to all fines recovered under those parts of ordinances which are identical with the general statutes, they will be regarded as recovered under the latter; that the city officers having so kept their accounts as to have mixed those fines which belong beyond controversy to the county with those of the city, and so confused them as to make it impossible to separate them, the whole fund should be turned over to the county: *Story on Agency,* § *205; Wren v. Kirton, 11 Ves., 377; Lupton v. White, 15 Ves., 432; Fletcher v. Walker, 3 Madd., 46; 1 Story Eq. Jur.,* § *623; Mass. Life Ins. Co. v. Carpenter, 2 Sweeny, 734.* They also cited, to the main proposition: *8 Mich., 392; 17 Mich., 390; 18 Mich., 445; 27 Mich., 267.*

*W. Scofield,* for respondents:

City by-laws and ordinances are entirely of local application and intended for local benefit, and are passed by a body independent of the county, in whose action the county has no voice; there is a marked difference between a mere local by-law or ordinance and a general state law: *26 Mich., 422;* and city by-laws and ordinances are not criminal laws, and cases under city ordinances cannot be brought into the supreme court by writ of error or exceptions, and they resemble criminal cases only in being penal proceedings; and no offense is a crime which does not violate the laws of the land: *8 Mich., 110, 262.*

In the cases where this question of fines has heretofore arisen in this court, the fines were collected for breaches of state laws, and not merely of ordinances passed under them: *17 Mich., 390; 18 Mich., 445;* while the fines in question in this case were collected for violations of mere city by-laws and ordinances.

As to whether the same act may be an offense against the general law and also against a local ordinance and may be punished in both cases: See *18 Mich., 445; 3 E. D. Smith, 156; 9 How., 569; 14 How., 19; 14 Ala., 400; 6 Ind., 852; 24 Mo., 96; 13 Wend., 341; 15 Wend., 215.*

CAMPBELL, J:

The relator, who prosecutes as county treasurer of Bay county, asks a *mandamus* to compel the city authorities to pay over such funds as have been paid into their treasury upon fines collected for violations of city by-laws, on prosecutions before the recorder. The ordinances under which these fines were collected were all passed to punish various kinds of disorderly persons and conduct, most of which were to some extent also placed under condemnation of some kind by state law, and some of which are punished more or less severely by statute. In one instance the statutory punishment is the same with that under the by-laws.

The defense is, that these collections were not made under the "penal laws" of the state, but under the city ordinances.

The constitution declares that "all fines assessed and collected in the several counties and townships for any breach of the penal laws," shall be exclusively applied to the support of libraries.—*Art. XIII.*, § *12.*

This provision does not differ from that in the constitution of 1835, except that by that certain militia exemption moneys were included in the same fund. That constitution declared that "the clear proceeds of all fines assessed in the several counties for any breach of the penal laws shall be exclusively applied to the support of such libraries."— *Art. X.,* § *4.*

The only statutes ever passed on the subject were passed under the old constitution, and appropriate not only "fines for any breach of the penal laws of this state," but also penalties and forfeitures imposed by law or collected under recognizances.—*Chapter 128 of R. S. of 1846, entitled " Of the collection of penalties, forfeitures and fines, and of forfeited recognizances," section 41;* also *section 116 of the Primary School Act, p. 233.*

These provisions have remained unchanged, the chapter on the collection of penalties, etc., never having been modi-

fied, and the section in the primary school act having been. re-enacted.—*C. L.*, § *3673*.

These are the only laws which require such moneys to be paid over to the county treasurer. The constitution says. nothing about it. The laws then and since have recognized. a distinction between penal forfeitures for the violation of the laws of the state for the preservation of the public; order and enforced by the state authorities, and the multi-tudinous forfeitures under contracts, taxes, highway laws: and other statutes, where a liability arises to incur penalties, to the state or local interests or private parties aggrieved, where the omissions of duty have not been treated as coming within the category of criminal conduct, but partake of the nature of a civil grievance or of a merely local wrong. There has never been any law requiring such moneys to be paid to the county treasurer.

By the charter of Bay City, all fines imposed by any by-law or ordinance of the common council may be sued for by the city attorney in the name of the corporation *(sec. 57)* before the recorder or police justice. The city may remit any such fines *(sec. 61)*, and it is declared that "all fines, penalties or forfeitures recovered before the recorder and police justice shall, when collected, be paid into the city treasury, to be appropriated as the council may direct. —*Sec. 67.* By *section 55* the powers belonging to the person designated as "police justice" in that capacity are declared to be additional to his powers as a justice under the general laws of the state, and the recorder's judicial powers are those of a police justice, as prescribed by the charter *(sec. 31)*, while his general duties are not judicial.

There can be no doubt whatever of the intention of the legislature to distinguish fines and penalties under the by-laws from those under state laws, and to dispose of them differently. The law evidently regards them as imposed to redress mischiefs injurious to the local interests. If these fines belong to the library fund, it must be because the

charter is in that respect unconstitutional, and because the city by-laws are penal laws in the sense of the constitution. There can be no ground for distinguishing one by-law from another in this regard. If the delegation of authority from the state to impose such consequences renders these provisions penal laws, no difference is found in the charter between any classes of acts which come within the control of the council. Whatever they can regulate by ordinance, they can and must regulate in the same way—having a discretion as to the amount of penalties, but none to distinguish between their effect when imposed. If the punishment is fixed by the by-laws, the penalties for whatever purpose must stand on one footing. The whole power is derived from the same sections of one charter. It so happens that on some subjects contained in these ordinances there is state legislation also, and in one instance it is identical in substance with the ordinances (in regard to a class of drunkards), but it cannot be claimed that a state prosecution could be interfered with or the penalty remitted by the corporation. How far a double jurisdiction may lawfully go in such cases, is a question not before us. But with this one exception, the city ordinances either punish by fine that which the state has not so punished, or impose punishment very different in degree. The charter does not permit most misdemeanors to be punished by ordinance as severely as under the state laws, and the penalties are very different, and the whole system is aimed at furthering local interests and redressing wrongs against the municipal policy.

We have heretofore on more than one occasion intimated that the penal laws referred to in the state constitution were the laws of the state. The term *law*, as defined by the elementary writers, emanates from the sovereignty and not from its creatures. The legislative power of the state is vested in the state legislature, and their enactments are the only instruments that can in any proper sense be called laws. In the decisions of this court referring to the class

of provisions now before us, the distinction has been very expressly indicated.—*Wayne County v. The City of Detroit, 17 Mich. R., 390; People v. Controller of Detroit, 18 Mich., 445; Mixer v. Supervisors of Manistee County, 26 Mich., 422.*

It is claimed, however, that certain of these fines may be regarded as imposed under the laws of the state, and the cases in the 17th and 18th Michigan are cited for that purpose. Those cases, however, are very different. There the city charter, which was itself a state law, authorized the police court, which had no jurisdiction whatever to impose any penalties in the cases in question but those defined by the law itself, to deal with those particular cases and punish them as the statute directed. The authority was distinctly statutory, and the penalties were neither imposed nor governed by the ordinances. The only important question involved was, whether special provision could be made for punishing unlawful acts in a single city; and that was decided to be lawful.

We have not been able to discover in any of the acts governing Bay City provisions analogous to those in the Detroit acts. The Detroit police court was not created by the charter, but by an independent statute passed under the old constitution and continued in force by the schedule to the present constitution. Its duties are the same in substance with those of justices in criminal cases, and are almost exclusively confined to dealing with criminals against state laws. The provisions referred to were part of a new police system. The recorder's court of Bay City is organized under the charter for city purposes, and nothing has been done to give it any special powers over peculiar classes of misconduct, punishable by statutory penalties. The case seems to present no features different from what would appear where the penalties were imposed for any act forbidden by ordinance, whether involving serious and general considerations or relating to local convenience.

Some very interesting questions are discussed in the argu-

ments, but the only question of moment is, whether this money belongs in the county treasury for distribution. If it does not belong there, the relator is not concerned in its uses, and cannot inquire into its sources or its disposition.

We think the *mandamus* should be denied, without costs to either party.

The other Justices concurred.