141    162
214    ²515

## V. O. MERWINE v. COUNTY OF MONROE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF MONROE COUNTY.

Argued March 11, 1891—Decided March 23, 1891.

1. Under § 41, act of April 15, 1834, P. L. 544, providing for the compensation of county treasurers, the commissioners and auditors, at their discretion, may fix one rate of compensation for ordinary receipts and expenditures, and a less rate for money received and expended for the erection of county buildings.

2. The said section provides that "the rate shall be settled from time to time." It is in strict compliance with this provision, that the commissioners, with the approbation of the county auditors, may fix the compensation of the county treasurer at the beginning of each year : Crawford Co. v. Nash, 99 Pa. 253.

3. On an appeal from the report and settlement of the treasurer's accounts by the county auditors, under § 56, act of April 15, 1834, P. L. 547, the Court of Common Pleas has no power to review the action of the commissioners and auditors in fixing the treasurer's compensation : Per DREHER, P. J.

4. The commissioners alone cannot fix the treasurer's compensation, nor can the auditors ; it requires their joint action, and from that the act of 1834 gives no appeal. When the commissioners and auditors *fail* to fix the compensation, an appeal lies under the act of April 16, 1875, P. L. 54 : Per DREHER, P. J.

Opinion of Court below.

Before PAXSON, C. J., STERRETT, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 299 January Term 1891, Sup. Ct.; court below, No. 17 May Term 1890, C. P.

On January 30, 1890, the report of the county auditors was filed, showing a balance in the county treasurer's hands of $14,187.19, after an allowance of two per cent commissions on $25,932.54, moneys received, and a commission at the same rate on $20,635.22, moneys paid out; and a further allowance of one half of one per cent commissions on $41,592.47, other moneys received, and a commission at the last named rate on $36,808.73, other moneys paid out. On March 29th, V. O. Merwine, county treasurer, appealed from said report and settlement to the Court of Common Pleas; and on September 27th, a case stated was filed, wherein the said treasurer was plaintiff and the said county defendant, for the judgment of the court thereon.

After argument of the case stated, the court, DREHER, P. J., on December 29, 1890, filed the following opinion:

The parties have agreed upon the following facts, in the nature of a case stated for the opinion of the court:

1. The appellant (plaintiff) is the treasurer of the county, elected in November, 1887. His term of office commenced on the first Monday of January, 1888, and will expire on the first Monday of January, 1891.

2. For the year 1888, the first year of plaintiff's term, he was allowed a commission of two per cent upon all moneys received, and the same rate upon all moneys paid out; which compensation was fixed by resolution of the county commissioners, with the approbation of the county auditors, at the annual settlement on January 12, 1888, as follows, to wit:

" We, the commissioners, with the approval of the auditors of the county of Monroe, have this day fixed the compensation of the treasurer of said county as follows: Upon all moneys received by him for taxes collected, including proceeds of land sales, two per cent; and upon all moneys paid out by him upon checks for the legitimate expenses of the county, two per cent; and upon all moneys received by him for the purpose of

the erection of county buildings, one half of one per cent, and one half of one per cent for paying out for the same purpose."

3. On January 29, 1889, the commissioners and auditors fixed the compensation of the treasurer, at one and three quarters per cent on all moneys received from the ordinary revenues, and upon all moneys paid out for ordinary expenditures; and one half of one per cent upon all moneys received and the same paid out for the purpose of erecting county buildings; and on January 30, 1890, they amended the resolution of January 29, 1889, so as to make the compensation two per cent on ordinary receipts and expenditures for 1889, and fixing that sum for the year 1890, and one half of one per cent on moneys received, and the same on all moneys paid out for erecting county buildings.

4. In 1890, the commissioners commenced the building of a new court house, and for that purpose borrowed from time to time, on county bonds, large sums of money which were received by the plaintiff as treasurer, along with the ordinary receipts.

5. Since the year 1879, the commissioners and auditors have regularly every three years, at the beginning of every treasurer's term, fixed two different rates of compensation to the treasurer; one rate on the ordinary receipts and disbursements, and another on receipts and disbursements on account of the erection of county buildings, though no such buildings have been erected during said interval, until the commencement of the new court house.

6. Prior to the year 1879, the rate of compensation to the treasurer has been the same for the entire term of any one treasurer, without regard to the source whence the money was received; and the rate for many years has been two or two and a half per cent.

7. In the year 1875, the commissioners built a new jail, borrowing $26,200 for that purpose; and the then treasurer, Jonas Altemose, was allowed a commission of two and one half per cent upon that sum, as well as upon the ordinary receipts, and the same for disbursements.

The agreement provides for judgment as follows:

"If the court shall be of the opinion that the county commissioners and auditors, either cannot or should not fix

two different rates of compensation for the treasurer, or change
the rate of compensation during his term, after the same has
been once fixed, then judgment to be entered in favor of the
plaintiff and against the defendant, for the difference between
one half of one per cent and two per cent on the receipts and
disbursements of money for court house purposes, i. e., receipts
from sale of court house bonds, $41,592.47; disbursements of
same, $36,808.73. If the court shall be of opinion that the
commissioners and auditors have the power, and have properly
exercised it in fixing two different rates of compensation, and
changing the rate allowed for the year 1888, during the con-
tinuance of the present term, then judgment to be entered in
favor of the defendant."

The stipulations for judgment are: Judgment is to be entered
for the plaintiff, (*a*) if the court is of opinion that the commis-
sioners and auditors have not the power to fix two different
rates of compensation for the treasurer; (*b*) if the court be of
opinion that the commissioners and auditors should not fix two
different rates; (*c*) if the court be of opinion that the commis-
sioners and auditors cannot or should not change the rate of
compensation of the treasurer during his term of office, after
the same has been once fixed. Judgment is to be entered for
the defendant if, in the opinion of the court, the commission-
ers and auditors have the power and have properly exercised
it in fixing two different rates of compensation, and to change
the rate allowed for the year 1889, during the continuance of
the term of the plaintiff.

It will be noticed that judgment for the defendant depends
upon three elements or factors; (*a*) the power of the commis-
sioners and auditors to fix two different rates of commissions;
(*b*) that they have properly exercised the power; (*c*) that they
have the power to change the rate of compensation during the
treasurer's term. All these elements must concur, taking the
stipulation literally, to entitle the defendant to judgment; and,
failing either of them, then, according to the stipulation for
judgment in favor of plaintiff, judgment must go for him.

Now, though the commissioners and auditors did, by resolu-
tion of January 29, 1889, change the rate of compensation of
the treasurer, from two to one and three quarters per cent, on
the ordinary receipts and expenditures, which was intended for

Opinion of Court below.

the year 1889, yet they, on reconsideration, on January 30, 1890, amended that resolution and fixed the compensation at two per cent, and that was allowed the treasurer in the settlement of his account for 1889; so that in fact there was no change in the compensation of the plaintiff, from that which was fixed when he came into office, and this element ⌐¹ ould properly be eliminated from the case, because it contradicts the facts, or rather, there is no fact upon which to base or predicate the stipulation; and if we should enter judgment in favor of the plaintiff upon this stipulation, the judgment would be upon an assumed fact or circumstance that does not exist; but, as we are of opinion that the commissioners and auditors have the power, the error of statement is unimportant.

Let us examine the grounds upon which the plaintiff claims judgment:

(a) If the commissioners and auditors have not the power to fix two different rates of compensation. In support of this position or contention, we are referred to § 41, act of April 15, 1834, P. L. 544, which reads: "Each county treasurer shall receive in full compensation for his services on behalf of the county, a certain amount per cent on all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners, with the approbation of the county auditors." The contention is, that the rate per cent must be uniform on all moneys received and paid out; that the words "a certain amount per cent on all moneys," mean that the rate shall be one and the same on all moneys, without regard to the source from which they are derived. We do not so understand the statute. If this be so, then if an emergency should arise in which the county would be under the necessity of making a temporary loan of thousands of dollars, the receiving and paying out of which would be of much less trouble and labor to the treasurer than in receiving and paying out the ordinary revenues, and upon the estimated annual amount of which the compensation, by a per centum, is usually fixed, the rate of compensation would be the same. We understand the act to mean that the compensation shall be certain; that is, fixed, on all moneys; but, in fixing it, the commissioners may make one uniform rate, or different rates, as in their judgment is fair and reasonable, in view of the trouble and labor imposed

upon the treasurer in receiving the money, as it may be in large or small amounts, or for extraordinary work which necessitates a large increase, by loan, of the receipts and expenditures. The commissioners could reach the same result by fixing a uniform per cent less than the usual rate on the ordinary revenues, upon the aggregate of ordinary and extraordinary receipts and disbursements.

(*b*) That the commissioners should not fix two rates. Having the power, it is a matter entirely in the discretion of the commissioners and auditors, whether they should or should not exercise it. The fact that when building a new jail, no distinction was made between the ordinary and extraordinary receipts and disbursements, in fixing the treasurer's compensation, presents no bar to the exercise of the power now, to make a distinction. The same argument may be made against any alteration or change of compensation from what former treasurers received on the ordinary receipts and disbursements. True, the present treasurer may complain that he has not been as liberally dealt with as the treasurer who happened to be in office when the jail was built.

(*c*) That the commissioners and auditors cannot or should not change the rate of compensation of the treasurer during his term, after the same has been once fixed. The statute says the rate of compensation shall be fixed from time to time. It does not say it shall be fixed at the incoming of each new treasurer, and continued during his term, but from time to time; and it seems to us that fixing the compensation each year is a judicious exercise of this power. The commissioners are better able to judge, at the beginning of each year, what will be a fair compensation for that year, than to fix it for a term of three years; though the fact is that there has been no change made during the present incumbent's term. That they have this power is expressly held in Crawford Co. v. Nash, 99 Pa. 253. The fact that prior to 1879 the rate of compensation had been uniform for the entire term of each treasurer, without regard to the source whence the money came, or the purpose for which it was disbursed, is not a legal reason why the commissioners should not change the rate. In 1879 they made the change, evidently in view of the erection of a new court house, and have continued the compensation ever since upon

the basis then fixed. It follows, from these views of the court, that the plaintiff is not entitled to judgment, and what we have said leads to the conclusion that judgment must be entered for the defendant.

The question, though not raised by the case stated, of the power of the court to review the action of the commissioners and auditors in fixing the compensation of the treasurer, is suggested. At the argument, both counsel seemed to think there was no doubt of our power, and that on the appeal from the report of the auditors of the settlement of the treasurer's account, the power could be exercised. With all due respect to opinion of counsel, we cannot agree with them.

The forty-eighth section of the act of April 15, 1834, P. L. 545, declares that the county auditors "shall audit, settle and adjust the accounts of the commissioners, treasurer, and sheriff and coroner of the county, and make report thereof to the Court of Common Pleas of such county, together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner." The auditors are to settle the account of the treasurer, and make report thereof to the court; that is, a report of their settlement of the treasurer's account. The fifty-sixth section of the same act, provides that an appeal may be taken by the officer or the county, from such report, to the Court of Common Pleas. The appeal is not from the action of the commissioners and auditors in fixing the compensation of the treasurer. The appeal is from the auditors' report of the settlement of the treasurer's account. The auditors' settlement and report do not fix the treasurer's compensation. The settlement, so far as that item is concerned, is simply an allowance of the amount fixed by the joint action of the commissioners and auditors. The auditors cannot alone fix the compensation, nor can the commissioners. It requires their joint action, and from that the act of 1834 gives no appeal. It is said, if an officer cannot appeal, then the commissioners and auditors have it in their power to fix an entirely inadequate compensation. This may be a good argument to the law-making power, but can have no force in determining the law as it now stands. All ultimate power is more or less despotic and may be abused.

Reference was made to the act of April 16, 1875, P. L. 54,

Arguments.

the first section of which provides, "That in every case where the commissioners and auditors have heretofore failed or shall hereafter fail to fix the compensation of any county treasurer, an appeal may be taken to the Court of Common Pleas of the proper county by the commissioners or treasurer, in the same manner that appeals may now be taken from the reports of county auditors, on settlement of the accounts of county treasurers in this commonwealth; . . . . . and on every such appeal the court shall have power in its discretion to fix the compensation aforesaid finally." The language of this act is very plain. When the commissioners and auditors *fail* to fix the compensation, an appeal lies; not, when they have fixed it. A case may arise in which the commissioners and auditors disagree as to the amount of compensation, and it is for such a case the appeal is given.

And now, to wit, December 29, 1890, judgment is directed to be entered in favor of the defendant, with costs of suit.

—Judgment having been entered, the plaintiff took this appeal, specifying that the court erred:

1. In entering judgment for the defendant.

2. In ruling that the court had no power to review the action of the commissioners and auditors in fixing the compensation of the county treasurer.

*Mr. S. Holmes*, for the appellant.

That the court below had power to review the fixing of the treasurer's compensation, on the appeal from the auditors' report and settlement, counsel cited: Montgomery v. Heilman, 96 Pa. 44; Mays v. Fritton, 20 Wall. 414; act of April 16, 1875, P. L. 54. That there was error in entering judgment for the defendant on the merits: Section 41, act of April 15, 1834, P. L. 544.

*Mr. D. S. Lee* and *Mr. Charlton Burnett*, for the appellee, were not heard.

On the question of jurisdiction, the brief filed cited: McKee v. Sanford, 25 Pa. 105; Collins v. Collins, 37 Pa. 387; Stearly's App., 3 Gr. 270; Little Meadows Bor., 28 Pa. 256; Hill v. Tionesta Tp., 129 Pa. 525; Deihm v. Snell, 119 Pa. 316; Chester Co. v. Barber, 97 Pa. 463. Upon the merits of the case: Crawford Co. v. Nash, 99 Pa. 253.

Statement of Facts.

PER CURIAM:

We affirm this judgment upon the opinion of the learned judge of the court below.

Judgment affirmed.