## Potter County v. Bernard.

*Public officers—County treasurer—Compensation—Meeting of county commissioners to fix compensation—Notice to treasurer—Act of April 15, 1834.*

1. Under the Act of April 15, 1834, P. L. 537, a county treasurer, to protect his just rights, is entitled to notice of a meeting of the county commissioners called to fix his compensation. If such notice is not given to him, the compensation fixed at such meeting is not binding upon him.

*Public officers—County treasurer—Commissions on money from unseated lands—County moneys.*

2. Moneys paid into the hands of the county treasurer for school districts and townships from unseated lands are county moneys.

3. Such moneys can only be distributed to school districts and townships by orders of the county commissioners. If the treasurer pays them out without such orders, the payment is illegal, and he cannot collect commissions on the amounts so paid.

Appeal from report of county auditors. C. P. Potter Co., June T., 1920, No. 96.

*W. F. Du Bois,* for plaintiff; *W. K. Swetland,* for defendant.

HECK, P. J., Jan. 22, 1924.—The county auditors of this county, in their report for the year 1920, surcharged the defendant, Joseph Bernard, with certain commissions which he had retained for services as County Treasurer

of Potter County. The legality of these surcharges was questioned by the treasurer and an appeal was taken from the report, which we now have for disposal under a stipulation waiving jury trial.

The controversy raises two questions: First, the amount of commissions the defendant was authorized to receive on county and poor funds received and paid out by him for the year 1919; and, second, the right to commission on moneys collected for township and school districts from unseated lands which were paid the several claimants without any orders from the county commissioners.

As bearing on the method of determining the compensation of county treasurers in this State, our attention is directed to the Act of April 15, 1834, § 1, P. L. 537, which reads as follows: "Each county treasurer shall receive in full compensation for his services on behalf of the county a certain amount per cent. on moneys received and paid out by him, which rates will be settled from time to time by the county commissioners with the approbation of the county auditors."

The County Commissioners of Potter County, with the approbation of the county auditors, fixed the fees of the county treasurer for the year 1918 at 2½ per cent. This was not changed until April 9, 1919, when the commissioners, with the approval of the auditors, at a joint meeting held by them, established the commissions of the county treasurer for the year 1919 at 2 per cent.

From the evidence we have found that notice of the April meeting of the commissioners and auditors was not given to the defendant, and we are now to determine whether the commissions fixed at that time are lawful.

The defendant contends that a county treasurer is entitled to notice of any meeting of county commissioners, the purpose of which is to fix the compensation, before their action is binding upon him.

It will be noticed the act providing for commissions of the county treasurer makes no provision for notice to the county treasurer of any meeting by the commissioners and auditors at which his fees are to be established. The defendant, however, maintains that, regardless of this omission, the general principles of law require that notice should be given him.

As bearing upon this contention, it is observed that the power of county commissioners at the time it was exercised at the April meeting was arbitrary. From the amount of compensation agreed upon between the commissioners and auditors, there was no appeal allowed the treasurer, nor had he any other method whereby any injustice could be corrected. This has been changed, however, by recent legislation.

This power of the county auditors and commissioners is referred to in Merwine *v.* Monroe County, 141 Pa. 162, by Dreher, P. J., in an opinion which was approved by the Supreme Court as follows: "The auditors cannot alone fix the compensation, nor can the county commissioners; it requires their joint action, and from that the Act of 1834 gives no appeal. It is stated if an officer cannot appeal, then the commissioners and auditors have it in their power to fix an entirely inadequate compensation. This may be an argument to the law-making powers, but can have no force in determining the law as it now stands. All ultimate power is more or less despotic and may be abused."

The force of this statement as applying to commissioners and auditors will be more clearly understood when it is recalled that these officers, if they are conscientious in the performance of their duties, will at all times have a careful regard to protect the financial interests of the county. They have no

4 D. & C.

official concern or interest in procuring for the county treasurer an adequate allowance for his services, and the tendency is to lose sight of the fair demands of the treasurer in their regard for the county's welfare. It seems to us that, under these circumstances, the county treasurer, to protect his just rights, should be given notice to appear at the time his compensation is to be settled, that he may present his just claims.

The right to be heard before one may be charged with a debt, or have property rights adversely affected, is fundamental. This principle has often been applied by the courts, and as pertinent to the question in hand we refer to the case of Carpenter v. Wolf, 76 Pa. Superior Ct. 363. This case arose out of proceedings to recover the cost of building a portion of a partition fence under the Act of April 14, 1905, P. L. 162. The borough auditors required one of the land owners to repair his fence, and in default of this that he should pay the cost of having it done according to certain specifications. No notice was given him at the time the auditors met to view the fence. Suit was brought to recover the amount which the land owner should pay in the default of obedience to the auditors' orders. Judgment was entered for the defendant n. o. v.

In reviewing the action of the court below, Judge Trexler says, quoting from Shriver v. Stephens, 20 Pa. 138, as follows: "It is common law in every country, which no man of ordinary intelligence need to be taught, that a party whose rights are to be affected ought to have notice, and the want of it, or its equivalent in a case of this sort, would make the certificate void."

Also, in Blackmore v. Allegheny County, 51 Pa. 160, 163, the Supreme Court, in discussing the finality of auditors' reports, says: "In Wilson v. Clarion County, 2 Barr, 17, the same doctrine was held, subject only to the rule of universal justice, that the officer must have had notice of the proceedings in order that he might be present if he chose."

To the same effect is Rutherford's Case, 72 Pa. 82, in which the court says: "Thus, the first thing the land owner may know he finds himself made liable without trial or hearing, and subject to a heavy penalty for not submitting to it. This is not due process of law. It is contrary to the Bill of Rights and he is deprived of his money, or its worth, without the judgment of his peers, and not according to the law of the land. It is true, the judge says in his opinion that Mr. Henderson had actual notice of the proceedings, but no notice appears in the record, and such notice referred to is merely accidental."

In Brown v. Com., 2 Rawle, 40, the Supreme Court says of county auditors who have audited the accounts of the county treasurer: "If no notice was given to him, and the report had been made and filed and no appeal, and an execution had issued, the court, on application, would have set it aside. The principle is universal in this country that no man's person or property can be affected by a judgment of which he had no actual or legal notice."

The doctrine here asserted has often been applied to settlements of county and township auditors.

While the right of county treasurers to their fees is not a property right, yet it is compensation for services to be rendered, and is closely related to it. If officers who had the duty to fix compensation for such services provided an inadequate or inequitable amount, the effect is the same as if property had been unjustly and unlawfully retained.

We think, under the principle stated in these cases and under the facts and circumstances surrounding the settlement of the treasurer's commission April 9, 1919, that the defendant should have had notice of that meeting, and, without it, the commission fixed at that time was not binding on him. It is

conceded by the plaintiff that the defendant would be entitled to the same fees until the April meeting in 1919 as were settled for the year 1918. In view of this admission, we think that the charge of the county treasurer of 2½ per cent. for the whole year of 1919 should be allowed, and the surcharge as to this amount in the auditors' report be overruled.

As to the second proposition, we find the undisputed facts in the case to be that on the last day of his term of office, or Jan. 3, 1920, the county treasurer had in his hands a considerable sum of money due the several townships and school districts of the county. That on that day, following the custom that had been established for many years, the deputy county treasurer delivered to the clerk of the county commissioners a statement showing in detail the amount of moneys due the several townships and road districts, and requested an order from the commissioners to pay these sums. This the commissioners failed and neglected to make, whereupon the county treasurer drew for the benefit of the several school districts and townships checks for the amounts and sent them by mail to the several township officers and school district officers who were entitled to receive them. It is now contended by the county that the whole payment was unlawful; but as the townships and school districts have received the money to which they would have been entitled on orders properly drawn by the county commissioners, the question of the legality of these payments is not raised. But the County of Potter denies the right of the county treasurer to retain commissions on these sums paid.

The several acts of assembly which provided for the collection of township and school funds from unseated lands by the county treasurer all provide that this money is to be paid out by the county treasurer on orders from the county commissioners.

Moneys paid into the hands of the county treasurer for the school districts and townships, derived from the unseated lands, it is well settled are county moneys. The leading case on this question is Potter County v. Oswayo Township, 47 Pa. 162. There Judge White, in his charge to the jury, which was approved by the Supreme Court, states: "While it is in the treasury, it is to all intents and purposes a county fund, differing from other county funds only in this, that it must be applied to a special object. If it should be lost by the failure of the treasurer and his sureties, or by any other cause, the county would be liable for it to the townships. The treasurer has the custody of it in his character as treasurer. He had no right to put it in his private pocket and settle with the supervisors on his individual responsibility. It is paid out on orders by the county commissioners. The orders are presentable and payable at the treasury, and not at the private counter of the next treasurer."

This case is referred to and approved in Schuylkill County v. Pepper, 182 Pa. 13. To the same effect, see Cameron v. Shippen Township School District, 117 Pa. 149.

Under these authorities, it clearly appears that the Treasurer of Potter County would have no more right to pay to the school districts and townships of the county taxes arising for their benefit from unseated lands without an order than he would have the right to pay any other indebtedness of the county without an order from the county commissioners.

We think that, under the act of assembly fixing his fees, the percentage for moneys received and paid out by him means moneys lawfully paid out by him, and this can only be done by orders from the county commissioners. The fact that the county commissioners did not furnish the orders when requested by the county treasurer is not a matter of which the county treasurer can complain. The time for paying townships and school districts moneys due

4 D. & C.

them on unseated lands rests entirely with the county commissioners, and only the municipalities to be affected can complain or have any standing in court to compel the distribution of the funds.

From these facts we are of the opinion that the surcharge for commissions retained by the defendant on the moneys paid to the townships and school districts of Potter County without an order from the county commissioners should be sustained.

And now, Jan. 22, 1924, after hearing and argument of counsel, it is ordered and decreed that the surcharge of the county auditors against the defendant for commissions on poor and county funds for the year 1919 is overruled, and that judgment be entered in favor of the plaintiff and against the defendant in the sum of $273 for commissions retained by the defendant on moneys paid to townships and school districts in the year 1919 without an order from the county commissioners.

From Archibald F. Jones, Coudersport, Pa.