985 A.2d 728

Kendrick **BUCKWALTER**, Appellant

v.

**BOROUGH OF PHOENIXVILLE**, Appellee.

Supreme Court of Pennsylvania.

Argued April 15, 2009.

Decided Dec. 28, 2009.

Richard A. Breuer, Malvern, for Kendrick Buckwalter.

Anthony T. Verwey, Unruh, Turner, Burke & Frees, P.C., West Chester, for Borough of Phoenixville.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice EAKIN.

Pursuant to Pennsylvania's Borough Code § 1001, the Phoenixville Borough Council enacted an ordinance eliminating compensation for its councilmembers and mayors, effective immediately.[1] Appellant, a councilman who voted against the ordinance, sought a declaratory judgment invalidating it, contending it altered councilmembers' compensation mid-term, in violation of Pennsylvania Constitution Article III, § 27.[2]

The trial court, relying on *Baldwin v. City of Philadelphia*, 99 Pa. 164 (1881), determined the Phoenixville ordinance was not a "law" within the meaning of Article III, § 27, and dismissed appellant's action.[3] The Commonwealth Court af-

1. Section § 1001 provides "councilmen may receive compensation to be fixed by ordinance at any time and from time to time...." 53 P.S. § 46001.

2. Article III, § 27 of the Pennsylvania Constitution provides "[n]o law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Pa. Const. art. III, § 27.

3. In *Baldwin*, Philadelphia enacted an ordinance reducing a city official's salary during his term. This Court upheld the ordinance, holding

firmed, finding it was bound by *Baldwin's* holding that an ordinance is not a law within the meaning of Article III, § 27. *Buckwalter v. Borough of Phoenixville,* 940 A.2d 617, 624 n. 17 (Pa.Cmwlth.2008). The court noted it could not disregard the binding precedent of *Baldwin* and its progeny,[4] though it invited this Court to reconsider *Baldwin.*

 We granted allocatur to indeed reexamine *Baldwin,* and determine whether Pa. Const. art. III, § 27 prohibits mid-term compensation changes for elected municipal officers by means of a municipal ordinance. These are purely legal questions; thus, our standard of review is *de novo,* and our scope of review is plenary. *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006). In constitutional interpretation, " '[o]ur ultimate touchstone is the actual language of the constitution itself.' " *Jubelirer v. Rendell,* 598 Pa. 16, 953 A.2d 514, 528 (2008) (quoting *Stilp v. Commonwealth,* 588 Pa.

only legislative enactments were within the meaning of "law." *Baldwin,* at 170–71. Relying on William Blackstone's *Commentaries on the Laws of England,* the Court defined a law as "an emanation from the supreme power, [which] cannot originate elsewhere. It is a rule which every citizen of the state is bound to obey." *Id.,* at 170. The Court found the Legislature was the supreme power in Pennsylvania; an ordinance was merely a local regulation, binding only people in its community. *Id.* The Court reasoned as Article III limited the powers of the Legislature, it should only apply to the Legislature. *Id.*

4. Our courts have consistently followed *Baldwin,* as the constitutional language remains unchanged; however, we have not revisited the reasoning of the decision in the 128 years since its pronouncement. *See, e.g., McKinley v. School District of Luzerne Township,* 383 Pa. 289, 118 A.2d 137, 139 (1955) (Article III, § 27 "applies only to a *law,* which means an act of the Legislature, and not to action by any municipal or local authority") (emphasis in original); *Merwine v. County of Monroe,* 141 Pa. 162, 21 A. 509, 512 (1891) (*per curiam* ) (upholding County Commissioners altering compensation for county officers); *Crawford County v. Nash,* 99 Pa. 253, 260 (1882) (noting *Baldwin* excluded municipal ordinances from the term "law" in Article III, § 27); *Belitskus v. Stratton,* 830 A.2d 610, 615 (Pa.Cmwlth.2003) (applying *Baldwin* to allow pay increases for elected county officials); *Murphy v. Bradley,* 113 Pa.Cmwlth. 387, 537 A.2d 917, 920 (1988) (relying on *Baldwin* to determine judicial order was not law within Article III, § 27's meaning); *Sefler v. Borough of McKees Rocks,* 72 Pa.Super. 81, 87 (1919) (*per curiam* ) (noting only Legislature may alter officials' pay mid-term); *Davis v. Homestead Borough,* 47 Pa.Super. 444, 446–47 (1911) (ordinance providing salary in lieu of expenses for borough officer was not law).

539, 905 A.2d 918, 939 (2006) (citations omitted)). We interpret constitutional language as the average person would understand it when they voted on its adoption, and avoid strained or technical interpretations. *Id.*

*Baldwin* is precedential, and Pennsylvania follows the doctrine of *stare decisis*, which "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Stilp*, at 954 n. 31 (quoting *Randall v. Sorrell*, 548 U.S. 230, 244, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (citations omitted)). However, "*stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." *Estate of Grossman*, 486 Pa. 460, 406 A.2d 726, 731 (1979) (quoting *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877, 888 (1973)).

Appellant contends *Baldwin* utilized a strained, technical interpretation of the word "law." He claims a "law" is a rule governing a community regardless of its source, and argues Article III, § 27 is a substantive restriction, limiting the subject matter of legislation enacted by any entity in the Commonwealth. Appellant notes this Court has applied other sections of Article III to municipalities, and argues we should do the same with § 27. Appellant contends that as all municipalities derive their power from the Legislature, if the Legislature does not have the power to diminish salaries mid-term, it cannot delegate power to do so to municipalities.

Appellee counters that *Baldwin* was correctly decided, as at the time there was a national consensus that limited the word "law" to legislative acts. *See, e.g., State v. Lee*, 29 Minn. 445, 13 N.W. 913, 914 (1882) (violations of municipal "by-laws" are distinct from Legislature's laws for double jeopardy purposes), *abrogation recognized by Miles v. State*, 349 Md. 215, 707 A.2d 841, 847 (1998) ("The earlier view that state offenses and locally enacted offenses are treated as separate and distinct has been modified, because of double jeopardy principles

... "); *Meredith v. Whillock,* 173 Mo.App. 542, 158 S.W. 1061, 1064 (1913) (ordinance is not law); *Mayor of Rutherford v. Swink,* 96 Tenn. 564, 35 S.W. 554, 555 (1896) ("It is manifest that a municipal ordinance is not a statute ... "). Appellee contends *Baldwin* was consistent with this consensus. Appellee asserts prohibiting municipalities from addressing compensation mid-term would eliminate the flexibility necessary for municipal governance. Finally, because § 1001 of the Borough Code was enacted in reliance on *Baldwin,* appellee claims overruling *Baldwin* would cast doubt on § 1001's constitutionality.

Confining the term "law" in Article III, § 27 to enactments of the "supreme power," the Legislature, comports with Blackstone and his commentaries on English Law; while a worthy source, a more appropriate and ordinarily understood definition of "law" is "[t]he regime that orders human activities and relations through systematic application of the force of politically organized society, or through social pressure, backed by force, in such society." Black's Law Dictionary 900 (8th ed. 2004). This definition recognizes that the law comes from various legitimate sources and is not limited to direct enactments of the Legislature. For example, Black's describes an ordinance as "authoritative law or decree; esp. a municipal regulation .... [i]t is a legislative enactment, within its sphere, as much as an act of the state legislature." *Id.,* at 1132 (quoting 1 Judith O'Gallagher, *Municipal Ordinances* § 1A.01, at 3 (2d ed. 1998)).

■ Even at the time of *Baldwin,* "law" was understood to include more than a legislature's enactments. *See* 2 John Bouvier, *A Law Dictionary* 12 (14th ed. Philadelphia, J.B. Lippincott & Co. 1874) (definition of law includes "rules and methods by which society compels and restrains its members"). Municipal ordinances were understood even then to be laws. *See id.,* at 263 (ordinance is "[a] law, a statute, a decree"). It is fair to argue that as Article III of our Constitution establishes and limits the Legislature, it must, when it speaks of "law," refer to something done by that body; *Baldwin* does have some salient logic. However, it is also

logical to believe the term includes derivative pronouncements of bodies authorized and empowered by the Legislature, acts by bodies other than the Legislature itself. With the latter notion, we agree. We conclude "law" in Article III, § 27 is not limited to legislative enactments; an ordinance is understood to be a law, and *Baldwin's* conclusion to the contrary is unsound.

■ Borough Code § 1001, which permits a borough to set compensation for its councilmembers, is a provision enacted by the Legislature. Furthermore, "municipal corporations are creatures of the State and ... the authority of the Legislature over their powers is supreme. Municipal corporations have no inherent powers and may do only those things which the Legislature has expressly or by necessary implication placed within their power to do." *Denbow v. Borough of Leetsdale*, 556 Pa. 567, 729 A.2d 1113, 1118 (1999) (citations omitted). Thus, every municipal ordinance emanates from the Legislature because it was enacted pursuant to enabling legislation.

As appellant notes, this Court has applied other provisions of Article III to municipalities. In *Lighton v. Abington Township*, 336 Pa. 345, 9 A.2d 609 (1939), a township proposal to issue bonds to construct a sewer system permitted bondholders to take control of the system if the township defaulted. *Id.*, at 610–12. Taxpayers argued the proposed bonds violated Article III, § 20 (now § 31).[5] *Id.*, at 612. Enjoining the bond issuance, we held "the township, as the governmental agent of the state, is subject to the same prohibition to which the state is subject." *Id.*

We also applied the restriction set forth in Article III, § 29 (then § 18) to a municipality.[6] In *Schade v. Allegheny County*

5. At the time, Article III, § 20 provided: "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal functions whatever." Former Pa. Const. art. III, § 20.

6. This section, at the time, provided: "No appropriations, except for pensions or gratuities for military services, shall be made for charitable, educational or benevolent purposes, to any person or community, nor

*Institution District*, 386 Pa. 507, 126 A.2d 911 (1956), taxpayers sued to prevent the Allegheny County Institution District from spending its funds to support delinquent, neglected, or dependent children who had been placed in religious facilities. *Id.*, at 912. Noting the District was a product of the Legislature, we applied Article III, § 18 (now § 29), reasoning:

> It would be strange, indeed, if the legislature by creating a body politic or corporate to exercise a legislative function could do indirectly what it may not do directly. It seems too plain for cavil that, if a mere creature of the legislature can do what the legislature itself is constitutionally prohibited from doing, the carefully designed [constitutional] prohibition ... could be rendered useless. Such a result is not to be sanctioned.

*Id.*, at 913.

More recently, a borough council increased the pay of police officers who were subject to a collective bargaining agreement which did not provide for alteration of wages during the agreement's duration. *Denbow*, at 1113–14. The borough subsequently refused to pay this extra compensation, claiming it violated Article III, § 26,[7] and the officers filed suit. *Id.*, at 1114. This Court reasoned that as the Constitution prohibited the Legislature from effecting a pay increase, the borough "should be likewise constrained." *Id.*, at 1118. We invalidated the pay increases and distinguished the *Baldwin* line of cases by noting Article III, § 26 had already been applied to municipalities. *Id.*, at 1115–16.

These cases highlight *Baldwin's* continuing untenability. Article III, § 27's limitation is meaningless if the Legislature can circumvent it by authorizing municipalities to enact the

to any denomination or sectarian institution, corporation or association." Former Pa. Const. art. III, § 18.

7. This section provides:

No bill shall be passed giving any extra compensation to any public officer, servant, employe, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim against the Commonwealth without previous authority of law....

Pa. Const. art. III, § 26.

mid-term compensation changes the Legislature itself may not enact. This would be incongruous, as "[t]he [L]egislature, in turn, may delegate or grant only those powers which are constitutionally permitted." *Denbow*, at 1118 (citing *Cleaver v. Board of Adjustment of Tredyffrin Township*, 414 Pa. 367, 200 A.2d 408, 412 (1964)). We have determined *Baldwin's* construction of "law" as including only legislative enactments was erroneous. This Court has applied other provisions of Article III to municipalities, showing the restrictions of Article III can extend to municipalities. We overrule *Baldwin* insofar as it held Article III, § 27 of the Pennsylvania Constitution does not apply to municipal ordinances.

█ It is well-settled the Legislature may not alter, mid-term, the compensation of incumbent elected officials during their current terms. *Bakes v. Snyder*, 486 Pa. 80, 403 A.2d 1307, 1309 (1979) (Article III, § 27 prohibited statute providing for "immediate" pay increases for county officers). Because the Legislature lacks the power to make mid-term changes to the compensation of public officials, it cannot give such a power to municipalities. *See Denbow*, at 1118. Therefore, the Phoenixville Borough Council lacked the authority to change its councilmembers' pay during incumbent councilmembers' terms.

The order of the Commonwealth Court is reversed.

Jurisdiction relinquished.

Chief Justice CASTILLE and Justices BAER, TODD, McCAFFERY and GREENSPAN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

Initially, the majority opinion indicates that Pennsylvania courts have consistently followed *Baldwin v. City of Philadelphia*, 99 Pa. 164 (1881). *See* Majority Opinion, at 537 n. 4, 985 A.2d at 730 n. 4. Later in the opinion, however, the majority discusses a series of Article III cases exhibiting strong tension

with *Baldwin's* core rationale. *See id.* at 539–42, 985 A.2d at 732–33.

As ably advanced by Appellee, there have always been strong historical and contextual arguments to be made that the term "law," as used in Article III, refers only to enactments by the General Assembly.[1] Thus, I find this to be a very difficult setting in which to apply the exception to *stare decisis* pertaining to manifestly erroneous decisions. Rather, I believe the Court is in a position of reconciling two inconsistent, but both reasoned, lines of decisions, and that the present outcome is most consistent with this Court's modern Article III jurisprudence and the salutary policies underlying the constitutional prescriptions.

1. Appellee validly notes that *Baldwin* mirrors the position taken by a number of other courts at or near the time of its issuance. *See* Brief for Appellee at 3–6 (citing *State v. Lee*, 29 Minn. 445, 13 N.W. 913, 914 (1882) ("The terms 'by-law,' 'ordinance,' and 'municipal regulation' have substantially the same meaning, and are defined 'to be the laws of the corporate district, made by the authorized body, in distinction from the general law of the state.' "); *Town of Rutherford v. Swink*, 96 Tenn. 564, 35 S.W. 554, 555 (1896) (same); *United States v. Cella*, 37 App. D.C. 433, 435 (D.C.Cir.1911) ("While municipal ordinances or police regulations are binding upon the community affected by them, they do not emanate from the supreme power of the state, which is the exclusive source of all general legislation."); *Meredith v. Whillock*, 173 Mo.App. 542, 158 S.W. 1061, 1064 (1913) ("That a city ordinance is not law is obvious. An ordinance is defined to be 'a rule or regulation adopted by a municipal corporation.' " (emphasis removed and citation omitted)); *Maner v. Dykes*, 183 Ga. 118, 187 S.E. 699, 702 (1936) (determining that the word "law" used in a constitutional amendment referred to enactments by the General Assembly)). *See also Fennell v. Common Council of Bay City*, 36 Mich. 186, 190, 1877 WL 3736, *3 (1877) ("The term law, as defined by the elementary writers, emanates from the sovereignty and not from its creatures. The legislative power of the state is vested in the state legislature, and their enactments are the only instruments that can in any proper sense be called laws." (emphasis removed)).