43 A.3d 464

In re Nomination Petition of Salvatore "Sam" J. VALENTY for the Republican Nomination for County Commissioner in the Primary of May 17, 2011.

Appeal of Patricia J. Kiniry and Steven R. Mitchell.

In re Nomination Petition of Salvatore "Sam" J. Valenty for the Republican Nomination for County Commissioner in the Primary of May 17, 2011.

Appeal of Patricia J. Kiniry and Steven R. Mitchell.

Supreme Court of Pennsylvania.

Submitted on Briefs July 12, 2011.

Decided March 2, 2012.

Jesse David Daniel, the Serene Law Firm, Indiana, for Steven R. Mitchell, Appellant.

Katherine Elizabeth Missimer, Lawrence J. Tabas, Obermayer, Rebmann, Maxwell & Hippel, L.L.P., Philadelphia, for Patricia J. Kiniry, Appellant.

Gerald P. Neugebauer Jr., Neugebauer, Swope & Swope, P.C., J. Dennis Previte, Ebensburg, for Salvatore "Sam" J. Valenty, Appellee.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, and ORIE MELVIN, JJ.

### *ORDER*

PER CURIAM.

The appeal from the order of the Commonwealth Court is hereby DISMISSED as moot.

Chief Justice CASTILLE files a dissenting statement joined by Justices BAER and McCAFFERY.

Chief Justice CASTILLE, dissenting.

The Court dismisses this appeal as moot, noting the candidate's retirement from his elected position and his lack of interest in pursuing this litigation. I respectfully dissent. In my view, this case is appropriate for decision pursuant to the well-accepted exception to the mootness doctrine by which we decide matters capable of repetition that may escape review. For the following reasons, I would decide this appeal now, and in favor of appellants, and reverse the decision of the Commonwealth Court panel below.

Unlike the U.S. Constitution, the Pennsylvania charter does not require presentation of an active case or controversy to a court for decision. Nonetheless, this Court has recognized several discrete doctrines of case or controversy justiciability, among them mootness. *Rendell v. Pa. State Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708, 717 (Pa.2009). As an exception to the mootness doctrine, however, the Court may decide matters which are capable of repetition but may evade review if normal rules of mootness are applied. *Legal Capital, LLC. v. Med. Prof'l Liability Catastrophe Loss Fund,* 561 Pa. 336, 750 A.2d 299, 301 n. 2 (Pa.2000).

I agree with the Court that, because appellee candidate lost the primary election last year, any complaint regarding a defect in his nomination petition to appear on the primary ballot is moot. But, the Court was fully aware that this development could occur when we granted review; if it had been a powering consideration, we could have simply held the allocatur petition until after the primary. As it happened, the candidate, an incumbent, retired at the end of his term and,

long before then, expressed his disinterest in filing a brief in the appeal. But, in my view, application of the exception to the mootness doctrine is particularly appropriate here, in light of the nature of election appeals generally, and of this matter in particular.

Election appeals are not like other appeals. I have previously addressed the unique difficulties arising because of the expedited nature of decisions in election matters. *See, e.g., In re Petition of Fitzpatrick,* 573 Pa. 514, 827 A.2d 375, 378 (Pa.2003) (Castille, J., dissenting). The timeframes for decision are constrained, and we very rarely decide cases via published opinions. *See In re Farnese,* 609 Pa. 573, 17 A.3d 375, 382–83 (Pa.2011) (Castille, C.J., concurring). In the cases in which we issue opinions, it is not at all uncommon for one or the other of the parties to lose interest. Such is the case here where the candidate, having lost the primary election, then lost interest in pursuing this appeal to vindicate his prevailing position below. In this respect, election appeals are sui generis. Specifically, we accepted allocatur in this matter to decide by published opinion an important and potentially recurring issue regarding candidate and notary fraud in the nomination process. The issue transcends this case. This issue is unlikely to reach our Court other than with a constrained timeframe for decision, given the relative briefness of the election calendar. *Western Pa. Socialist Workers 1982 Campaign v. Conn. Gen. Life Ins. Co.,* 512 Pa. 23, 515 A.2d 1331, 1333 (Pa.1986). Moreover, the ideal case may never arrive—while the alleged fraud goes on. For these reasons, in spite of the candidate's eventual lack of interest, I believe that this case is appropriate to address this particular form of fraud in the nomination process and to address it now, rather than later.

On the merits, I would reverse the decision of the Commonwealth Court. The panel below held that a notary public's admittedly false (and arguably criminal) certification of circulator affidavits is an amendable defect of the candidate's nomination petition. The panel did not address whether the relevant statutory provision, Section 977 of the Election Code,

permitted such an amendment. *See* 25 P.S. § 2937. Instead, relying primarily on this Court's brief 1963 opinion in *Petition of Ross*, 411 Pa. 45, 190 A.2d 719 (Pa.1963), and on a single judge opinion in *In re Duncan*, 102 Pa.Cmwlth. 99, 516 A.2d 776 (Pa.Cmwlth.1982), *Ross's* progeny, the panel held that the "defects" represented by the notary's falsehood were "cured" by a later non-notarization proceeding that did not affect the initial false certification, and offered no independent analysis of the operative statutory language. The lower court's decision is obviously contrary to the plain language of the relevant statutory provision, and is otherwise indefensible. If *Ross* were on all fours, I would overrule it; but the case is as distinguishable as it is puzzling and inexplicable.[1] I would, instead, confine it to its largely undisclosed facts.

Every circulator affidavit attached to the candidate's nomination petition here reads

**Before me, the undersigned authority in and for said State and County, personally appeared the undersigned, who, being duly sworn according to law, did depose and say** that he or she is a qualified elector duly registered and enrolled as a member of the political party and of the political district referred to in this petition; that his or her residence is as set forth below; that the signers to the foregoing petition signed the same with full knowledge of the contents thereof; that their respective residences are correctly stated therein; that they all reside in the said political district; that each signed on the date set opposite his or her name; and that, to the best of deponent's knowledge and belief, the signers are qualified, registered and enrolled electors of the designated party of the aforesaid political district. . . .

**Sworn to and subscribed before me** this 8th day of March 2011.

Affidavit of Circulator (emphases added). Each affidavit bears a circulator's signature, and the signature and seal of

1. Appellants do not request that we overrule *Ross,* and indeed, that fact may well explain, in part, this mootness dismissal occurring so many months after submission of the case.

the same notary public. The language of the affidavit reflects the Notary Public Law requirement that an affiant must actually appear in person before the notary to swear and subscribe to the facts in the affidavit, if the affidavit is to be valid. *See* 57 P.S. § 158.1. On the face of the election paperwork, it appears that all of the purposes of a notarization were served, making the circulations appear sufficient to establish the facts they represent.

However, notwithstanding the facial sufficiency of the affidavits, in fact, the notary's certification was a falsification. None of the circulators appeared in person before her to swear or subscribe to the statements in the several affidavits she signed and sealed on the date certain reflected in the affidavits. None. In her later testimony to the trial court, the notary admitted that she had attached her *jurat* to the circulator petitions when these were given to her by the candidate, without any circulator appearing in person and swearing to anything in her presence. N.T., 3/17/11, at 25–26. Notarizations are not mere formalities or annoyances; indeed, actions such as that of the notary public here may expose the notary to prosecution for false swearing in official matters. *See* 18 Pa.C.S. § 4903(a).[2]

Such actions also directly undermine the probity of the election process. Generally, a notary's official acts, certified by her hand and seal of office, are evidence of the sworn-to facts contained therein. *Citizens Comm. to Recall Rizzo v. Bd. of Elections of Phila.*, 470 Pa. 1, 367 A.2d 232, 243 (Pa.1976). In election matters, actual circulators attest that the candidate has sufficient support from qualified voters to appear on the ballot. Election Code requirements "relating to the form of nominating petitions and the accompanying affida-

---

2. I note that, at the time that *Ross* was decided, "false swearing" was not a crime, as it is today. Section 4903 became part of the Crimes Code when the Code was adopted in 1972. The official comment states that there was "no similar provision in existing law." 18 Pa.C.S. § 4903 cmt. The provision was derived from Section 241.2 of the Model Penal Code and its purpose was "to fill th[e] void in existing law which applie[d] only to falsification of 'material' testimony." *Id.* (referencing 18 Pa.C.S. § 4902 cmt.). Section 4903 became effective in 1973, ten years after *Ross* was decided.

vits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process. The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process." *Petition of Cianfrani,* 467 Pa. 491, 359 A.2d 383, 384 (Pa.1976) (citations omitted). The notary public and the candidate here deliberately ignored these plain, simple requirements. The affidavits here were a fraud.

The notary's false certification, though later proven blatant, nevertheless was not at all apparent on the face of the nomination petition. A person inclined to challenge a candidate would have no reason to suspect that the factual reliability the notary requirement is meant to ensure had been ignored here. In my view, Section 977 of the Election Code does not permit amendment under these circumstances.

Section 977 states that the court may allow a candidate to amend the nomination petition if the objections raised "relate to material errors or defects apparent on the face of the nomination petition." 25 P.S. § 2937. By its plain language, Section 977 does not apply, since the "material error or defect" here was not apparent on the face of the petition. The Commonwealth Court, relying upon the result in *Ross* without conducting its own independent explication of the statute, declared simply that "the defects" in the circulators' affidavits were "cured." Cmwlth. Ct. Op., at 7. Notably, *Ross* provided no grounded explanation either, appearing to read the Section 977 language in the disjunctive, *i.e.,* as permitting amendment of either "material errors" or "defects apparent on the face of the nomination petition." *Ross,* 190 A.2d at 720. Thus, under the implied *Ross* interpretation, "material errors" need not be apparent on the face of the petition in order to be amendable. But, although the *Ross* interpretation may have required the Commonwealth Court panel to view the fraudulent certification as a material error, the court below repeatedly referred to the certification as a mere "defect." In my view, there is no textual or interpretive basis for holding that the qualifier applies to "defects," but not to "material errors," and requires one but not the other to be apparent on the face of the

petition. When a challenge is made to a nomination petition, what is there to "amend" except material representations on its face? The face is the form that is filed, and it is what establishes a valid candidacy. The plain language of the statutory language addresses errors or defects, when apparent on the face of the petition. And, notably, *Ross's* unexplained contrary interpretation of the statute now allows non-facial fraud to be amended away.

Even if I could accept the disjunctive reading of the statute, I do not believe the proffered amendment here acted to "amend" the fraudulent circulator affidavits. Indeed, absent a time machine, there was no way that the notary could make her false certification true by amendment. The circulators here simply did not "personally appear before her" on the day she swore they had (and dates are crucial when nomination petitions are at issue); they were not duly sworn before her; and they did not state what they were required to state before her. Obviously, there can be errors and defects, facial or latent, that may be subject to correction (*e.g.,* spelling mistakes, stamping a wrong date). But, the material error here went to the essence of certification. The notary's post-objection affidavit affirms that each circulator had appeared after appellants raised their objections, and affirmed that they had signed the respective circulator affidavits she had falsely notarized—albeit not in her presence. Notary's Affidavit of Affirmation, 3/18/11. Nothing the notary or the circulators could say could make their joint false swearings retroactively true.

The Commonwealth Court's decision here ultimately derived not from independent statutory construction, or a focus on whether the amendment here actually "cures" the falsehood, but rather from a conclusion that the *Ross* case controls and ends the matter. I do not agree.

In *Ross,* candidate Ross signed his candidate affidavit and circulator affidavits for petitions he circulated without appearing in person before the notary; the notary nevertheless attached her *jurat.* This Court affirmed the lower court's decision permitting Ross to offer properly notarized affidavits

in court, as an "amendment" under Section 977. The *Ross* decision was brief, unexplained and, in my view as expressed above, obviously was inconsistent with the plain language of Section 977 of the Election Code.

Even assuming that *Ross's* unexplained holding (and error) warrants perpetuation, it does not control here. The *Ross* Court did not set forth the content of the notarization; thus, we cannot assess the degree of misrepresentation made by the notary. In addition, the "amendment" in *Ross* was by way of a new notarization. Again, the new notarization is neither set forth nor meaningfully characterized; it may be that the Court understood its holding as merely approving an untimely re-notarization. And, finally, as I have noted above, there was no false swearing statute at the time. But, in the case of the candidate here, the "cure" was testimonial. The candidate did not produce properly notarized, albeit untimely, circulator affidavits.

Having noted these obvious distinctions, my preference is not to draw so fine a line. Of course, *stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Buckwalter v. Bor. of Phoenixville,* 603 Pa. 534, 985 A.2d 728, 730–31 (Pa.2009) (quoting *Stilp v. Commonwealth,* 588 Pa. 539, 905 A.2d 918, 954 n. 31 (Pa.2006) (quoting *Randall v. Sorrell,* 548 U.S. 230, 243, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006))). *Stare decisis,* however, is not "a vehicle for perpetuating error" but "a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." *Buckwalter,* 985 A.2d at 731 (quoting *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726, 731 (Pa.1979) (quoting *Ayala v. Phila. Bd. of Pub. Educ.,* 453 Pa. 584, 305 A.2d 877, 888 (Pa.1973))).

The doctrine of *stare* decisis was never intended to be used as a principle to perpetuate erroneous principles of law. While we fully ascribe to Lord Coke's evaluation of the importance of certainty in the law, this end obviously cannot outweigh the necessity of maintaining the purity of the law.

The court's function is to interpret legislative enactments and not to promulgate them. Where, as here, by our decisions . . ., the Court distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated, we now have no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity.

*Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452, 456 (Pa.1975). The statutory construction decision in *Ross* is unexplained, it is contrary to the plain language of the statute, it encourages fraud (and other criminal conduct), and it creates no legitimate reliance interest, since no citizen—circulator, candidate, or notary—can legitimately assert a right to engage in a criminal falsification of circulator affidavits.

Going forward, in light of the plain language of Section 977 and of the arguably criminal nature of the notary's actions here, no candidate or notary can plausibly argue that s/he violated the Election Code and the trust reposed in notaries to root out fraud, or that s/he committed a crime, in reliance upon *Ross.* For these reasons, having the opportunity before us, I would disapprove the decision in *Ross* now. Although the Court may be unwilling to explicitly put a stop to this sort of fraudulent conduct today, any candidate who would repeat this sort of fraud does so at his or her peril, not to mention at the peril of the notary involved. I dissent.

Justice BAER and McCAFFERY join this dissenting statement.