## County of Crawford *versus* Nash.

99 253
141 167

99 253
23 SC ⁸ 45

99 253
214 ⁴515

1. Article XIV., § 5, of the Constitution, providing that "the compensation of county officers shall be regulated by law," plainly means that such compensation shall be ascertained and defined by act of the Legislature.

2. The Legislature having failed to enforce said provision of the Constitution by appropriate legislation, in so far as the regulation of the compensation of the treasurers of counties containing less than 150,000 inhabitants is concerned, the provisions of the Act of April 15th 1834, § 41, Pamph. L. 544, authorizing the county commissioners, with the consent of the county auditors, to fix, from time to time, the rate of compensation of said treasurers, are still in force in such counties.

3. The provisions of Article III., § 13, of the Constitution, that "no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment," apply only to laws passed by the General Assembly. Orders or agreements of county commissioners and county auditors are not within the prohibition of said section.

4. County commissioners and county auditors, acting under the provisions of the act of April 15th 1834, § 41, Pamph. L. 544, may, by resolution, may diminish the compensation of a county treasurer after his election or appointment to office.

[County of Crawford *v.* Nash.]

November 24th 1881. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR, J., absent.

ERROR to the Court of Common Pleas of *Crawford county:* Of October and November Term 1881, No. 272.

This was originally an appeal by William Nash, treasurer of Crawford county, under the provisions of the Act of April 16th 1875, § 1, Pamph. L. 54, from the report of the auditors of said county fixing the amount of appellant's commissions as treasurer for the year ending January 1st 1882.

The court directed an issue to be framed, wherein William Nash was plaintiff and the county of Crawford defendant, to determine the amount of said commissions due to the plaintiff.

On the trial of this issue, before CHURCH, P. J., the jury found a special verdict, setting forth the following facts : James G. Foster was county treasurer in and for the county of Crawford, for the three years prior to and ending on January 6th 1879, and the compensation of the county treasurer for and during his term of office was fixed by the county commissioners and the county auditors at two and one-fourth per cent. on all moneys received and paid out by him, and he received the same.

The plaintiff, Wm. Nash, was elected county treasurer for the county of Crawford on November 5th 1878, and having duly qualified entered upon the duties of his office January 6th 1879.

The county commissioners and county auditors elected at the same time, viz., November 5th 1878, also duly qualified and entered upon their duties on January 6th 1879. At a meeting of said commissioners and auditors, held February 11th 1879, it was resolved that the compensation of William Nash, the plaintiff, as county treasurer, be fixed at one and one-fourth per cent. on all moneys received, and to be received, and paid out by him during that year. During said year the plaintiff received and paid out altogether the sum of $123,543.55, upon which amount he was entitled to commissions, and per centage. The county auditors, in their report for 1879, allowed the plaintiff credit for commissions to the amount of $1,602, being at the rate of one and a fourth per cent. on the total amount received and paid by him in that year. If the court should be of opinion that plaintiff was entitled to commissions at that rate only, then judgment was to be entered for defendant. If, on the contrary, they should be of opinion that plaintiff was entitled to commissions at the rate of two and a quarter per cent., then judgment was to be entered for him in the sum of $1,235.46.

The court subsequently entered judgment for the plaintiff on the special verdict, filing the following opinion :

"The forty-first section of the Act of Assembly of the 15th

[County of Crawford *v.* Nash.]

of April 1834, Purdon Dig. 308, enacts that, 'Each county treasurer shall receive in full compensation for his services on behalf of the county a certain amount per cent. on all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners, with the approbation of the county auditors.'

"Pursuant to this law, the county commissioners of this county, with the approbation of the county auditors, settled the compensation of the county treasurer at the rate of two and one-quarter per cent., and such was the rate received by the incumbent of that office for the three years prior to and ending upon the 6th day of January 1879. This was, therefore, the law of the county of Crawford relative to the compensation of its county treasurer as it existed on the 5th day of November 1878.

"On this last-named day, William Nash, this plaintiff, was duly elected county treasurer of Crawford county, and on the 6th day of January 1879, duly qualified and entered upon the duties of his office.

"On the 11th day of February 1879, the commissioners, with the approbation of the auditors, fixed the compensation of the treasurer then in office, this plaintiff, at one and one-fourth per cent. on the county moneys to be received and paid out by him during the then ensuing year.

"The special verdict found in this case does not use the exact language of the Act of Assembly above quoted, but its legal intendment is in substantial consonancy with that Act.

"The question raised by the special verdict is whether the fixing of the treasurer's compensation by the commissioners and auditors on the 11th February 1879, is binding upon and applicable to the county treasurer, who had already been duly elected and had already duly entered upon the duties of his office. In other words, whether this plaintiff is entitled to the compensation fixed and in existence at the time of his election and the devolution of his office upon him, or only entitled to a lesser compensation fixed afterwards.

"The 13th section of the 3d article of the Constitution of 1873, is as follows: 'No law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment.'

"If the action of the commissioners of the 11th of February 1879, was a law, and such law diminished the salary or emoluments of this plaintiff as county treasurer after his election, it is of no validity as to him, because it infringes upon his constitutional rights. It is not a question of the invalidity of the law, but it is rather one of the inapplicability of the law to the special case, or to the particular person. Municipal law, or statute law, is a rule of conduct prescribed by the supreme power in the

[County of Crawford *v.* Nash.]

state. For the county, as a municipal division of the state, the commissioners are entrusted with the prescribing, or the ordering, or the directing of a rule or order for the conduct of an officer of such municipality, to wit, the treasurer's title to and right to receive a certain sum of money as compensation or emolument, which pertains to, is connected with, and grows out of his office, and is indeed an indissoluble part of that office.

"The commissioners are the law-making power quoad the office of treasurer, or at least the usufruct thereof.

"On and before the 5th of November 1878, this usufruct, or compensation, or emoluments of the office of the treasurer of the county, was fixed and settled at two and one-quarter per centum of the public or county moneys, which came into and went out of the treasurer's hands.

"On the last-named day this plaintiff was elected county treasurer, and on the 6th of January 1879, he entered upon the functions of his office. Afterwards, to wit, on the 11th of February 1879, the law was enacted that the compensation or emoluments of his office was fixed and settled at one and one-quarter per cent. of the public or county moneys, which were to come in and go out of his hands.

"This is certainly a diminishing of the emoluments of the county treasurer, and it was certainly a diminishing thereof after his election.

"If we give any force at all to the constitutional enactment, it would certainly seem that this proscription by the commissioners of the rule, by which the conduct of the treasurer was to be guaged, was, so far as this present treasurer was concerned, of no force or validity, and hence he does not come under its provisions or within its meaning.

"I do not discuss any question as to the county treasurer being a public officer, nor as to the term, salary, or emoluments (the latter especially), including the percentage or compensation fixed and annexed to the office. This matter is too plain for argument. The treasurer is assuredly a public officer, and his percentage of compensation is assuredly an emolument of his office.

"The section of the constitution under consideration is a new one, and it is by no means the least valuable or commendable of the novel provisions of that instrument.

"A citizen derives his title to an office from the sovereign people, and in so receiving it he is, and should be, invested with every right and privilege appertaining to it at the time the office is so conferred, and these rights and privileges should be interfered with by no earthly power. If, after the people have invested a citizen with an office, having attached to it a certain salary or compensation, some law-making power can take away

[County of Crawford v. Nash.]

that salary or compensation, the right of investiture by the people is practically destroyed. Or if, on the other hand, some law-making power can increase that compensation, it gives every opportunity for an influential, selfish and intriguing office-holder to obtain that which the people have not given him; and, in either case, is the will of the people frustrated and defeated.

"The people who elect, and the person who is elected, have a right to know the exact measure of power and substance they are giving and receiving; and this can be effected in no other or better way than in construing this provision of the constitution in a simple and natural manner. Much more might be said upon the wisdom and expediency of this constitutional provision, and of its aptitude to the case in hand, but it is unnecessary, as, I think, the plaintiff's office is clearly protected from the interference sought to be enforced against it.

"It follows, therefore, that the action of the commissioners and auditors, on February 11th 1879, however effectively it may act upon future treasurers, cannot affect this plaintiff in the emoluments of his office as they existed when he was elected, and hence, under the terms of the special verdict, as amended by the court (pro ut the same), judgment must be entered for the plaintiff in the sum of $1,235.46, together with costs of suit."

Defendant thereupon took this writ of error, assigning for error the entry of judgment for defendant on the special verdict.

*Thomas Roddy*, for the plaintiff in error.—By the provisions of the Act of April 15th 1834, § 41, Pamph. L. 544, each "county treasurer is to receive, in full compensation for his services, on behalf of the county, a certain amount per cent. on all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners, with the approbation of the county auditors."

The foregoing was the law in force in this Commonwealth at the time of the election of plaintiff.

Article XIV., § 5, of the Constitution, providing that the compensation of county officers shall be regulated by law, does not in the least affect the operation of this Act. Said Act is the law now in force regulating the compensation of county treasurers. The commissioners and auditors, therefore, had power to fix plaintiff's compensation at what rate they pleased.

The fixing of this rate was not a diminishing of plaintiff's emolument during his term of office within the prohibition of article III., § 13, of the Constitution. It is the duty of the commissioners and auditors to fix the rate for each incumbent

3 OUTERBRIDGE.—17

[County of Crawford v. Nash.]

in office. Until it is so fixed it has no existence. The plaintiff never had any right to compensation at the rate awarded to his predecessor in office.

Moreover, the act of county officers, fixing the compensation of a county treasurer, is not a "law" within the meaning of said section of the Constitution: Baldwin v. City of Philadelphia, 10 W. N. C. 558; *ante*, p. 164; Rucker v. Supervisors, 7 W. Virginia 661; Purcell v. Parks, 82 Ill. 346.

*W. R. Bole*, for the defendant in error.—The rate established as the compensation of the plaintiff's predecessor in office continued to be the legal rate demandable by plaintiff. By virtue of article III., § 13, it was made impossible to reduce said rate after plaintiff had once entered upon his term of office. Plaintiff was undoubtedly a public officer within the meaning of the above section: Riddle v. County of Bedford, 7 S. & R. 391; Commonwealth v. Bacon, 6 S. & R. 322; Dixey v. City, 38 Leg. Int. 157; reversed, 10 W. N. C. 558; *ante*, p. 164.

Mr. Justice Paxson delivered the opinion of the court, January 3d 1882.

At the time the present Constitution was adopted the only provision for the compensation of county treasurers was contained in section 41 of the act of April 15th 1834, P. L. 544, as follows: 'Each county treasurer shall receive, in full compensation for his services on behalf of the county, a certain amount per cent. on all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners, with the approbation of the county auditors." Since the passage of said act the compensation of the respective county treasurers has been fixed by the county commissioners and county auditors, as provided therein, except in counties having a population of over 150,000 inhabitants, as hereinafter stated.

The plaintiff below was elected treasurer of Crawford county at the November election 1878, and entered upon the duties of his office on January 6th 1879. The compensation of the outgoing treasurer, as fixed under the Act of 1834, was two and one-fourth per cent. upon all moneys received and paid out. Upon February 11th 1879 the commissioners and auditors of Crawford county met, and unanimously agreed that the compensation of plaintiff, as county treasurer, should be fixed at one and one-fourth per cent. The plaintiff contends that this action violates section 13 of article III. of the Constitution, which declares that "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment."

The act of 1834 has never been repealed. It may be as-

[County of Crawford *v.* Nash.]

sumed the convention regarded it with disfavor, from the fact, that section 5 of article XIV. of the Constitution provides, that " The compensation of county officers shall be regulated by law, and all county officers who are, or may be, salaried shall pay all fees which they may be authorized to receive into the treasury of the county or state, as may be directed by law. In counties containing over 150,000 inhabitants, all county officers shall be paid by salary, and the salary of such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him." The Act of March 31st 1876, P. L. 13, was passed, as its title imports, to carry into effect this section of the Constitution. It refers, however, only to counties having a population in excess of 150,000. As to them, specific salaries are fixed by said act for all county officers, including the treasurer. Then we have the act of June 12th 1878, P. L. 187, which ascertains and appoints the fees " to be received by the sheriffs, coroners, prothonotaries, clerks of the several courts, registers of wills and recorders of deeds of this Commonwealth, except in counties containing more than 150,000 inhabitants or less than 10,000 inhabitants." No provision is here made for county treasurers, nor is any reference made to their compensation in subsequent legislation, save the Act of April 30th 1879, P. L. 34, which allows them a fee of twenty-five cents for a certified copy of receipt for the payment of taxes on unseated lands, and section 6 of the Act of June 6th 1879, P. L. 102, which allows county treasurers a commission of one per centum on the military fund received and paid out by them.

It will thus be seen that the General Assembly has neglected to enforce, by appropriate legislation, that portion of section 5 of article XIV., which declares that " The compensation of county officers shall be regulated by law," so far as the county treasurers are concerned, except in the few counties whose population exceeds 150,000. We have no doubt this omission was unintentional. What concerns us now is its effect upon the Act of 1834.

It may be conceded that, since the adoption of the Constitution, the General Assembly could not lawfully pass such an act as that of 1834, for the reason, that the section of that instrument referred to imposes upon that body the duty of regulating the compensation of county treasurers. It is too plain for argument that a duty thus imposed cannot be delegated to the county commissioners and county auditors. " The compensation of county officers shall be regulated by law " is the imperative command of the Constitution. This plainly means that it shall be ascertained and defined by the legislature. No such language is to be found in the Constitution of 1838. It does not follow

[County of Crawford *v.* Nash.]

from this, however, that the act of 1834 fell with the adoption of the Constitution. It has been repeatedly held, that the Constitution is not self-executing, except wherein it so expressly provides. This subject is discussed, and the authorities collected, in The County of Allegheny *v.* Gibson, 9 Norris 397. It was accordingly held in Perot's Appeal, 5 Norris 335, that section 18 of the above-recited act of March 31st 1876, relative to the salaries of county officers, which postpones the operation of the act until the expiration of the terms of the incumbents, was constitutional.

Under all the authorities the Act of 1834 must be regarded as still in force. If not preserved by section 2 of the schedule, it is apparent that since the adoption of the Constitution there has been no provision in counties containing less than 150,000 inhabitants for compensation of county treasurers, and all allowances to such officers have been without law.

It was urged, however, that conceding all this to be true, the compensation to county treasurers cannot be increased or diminished during the term for which they are elected, by reason of the 13th section of article III. In Baldwin *v.* City of Philadelphia, decided at the last term at Pittsburgh (*ante*, p. 164), it was held, that the word "law" in this section of the constitution did not extend to the ordinances of a municipal corporation; that it included only such laws as emanated from the supreme power, which in this Commonwealth is lodged in the General Assembly. In Rucker *v.* Supervisors, 7 W. Va. 661, which arose under section 9 of article III. of the Constitution of West Virginia, which provides, that the compensation of public officers shall not be increased or diminished during their term of office, it was held, that this language in the Constitution applies only to such salaries or compensation, of public officers as have been definitely fixed or prescribed by law; either by the Constitution of the state or by some statute made in pursuance thereof. If the ordinances of a city are not laws within the meaning of this clause in the Constitution, much less so are the orders or agreements of the county commissioners and county auditors in regard to the treasurer's salary. The obvious meaning of the Constitution is, that the General Assembly should regulate—that is, ascertain and establish—the compensation which should be paid to the respective county treasurers, and that thereafter " no law "—that is, no Act of Assembly, should increase or diminish their respective salaries during the term for which they were elected. The whole difficulty in the case in hand grows out of the omission of the legislature to perform this duty. We have no doubt it will be promptly attended to, now that attention has been called to it. In the meantime the Act of 1834 remains in force, and the sal-

[Freeman *v.* Apple.]

aries of county treasurers not otherwise provided for by law, will have to be ascertained as heretofore.

> The judgment is reversed, and judgment is now entered in favor of the defendant below upon the special verdict.