## Emmaus Taxpayers' League v. East Penn Union School District

*Robert H. Jordan,* for plaintiff.
*Howard Yarus,* for defendant.

KOCH, J., March 25, 1957.—Plaintiff, Emmaus Taxpayers' League, an unincorporated association, together with individual taxpayers all of whom are residents of the school district here involved, instituted an action in equity against the East Penn Union School District, a municipal corporation, and its officers and members of the board of school directors and also Lemmon C. Stoudnour, the district superintendent. The complaint prayed for an order restraining the school district from paying the district superintendent increases in salary granted in pursuance of resolutions of the board of school directors. Other relief was requested which need not be discussed for the purpose of this decision.

The complaint avers that the district superintendent was elected in July, 1954, at a salary of $8,000 per annum for a four-year term. On April 28, 1955, the salary was set at $9,000 for the 1955-1956 school year and on July 12, 1956, another adjustment was made whereby the salary was set at $10,000 for the 1956-1957 school year. Both of the salary increases were effected by resolutions. It is averred that the resolution of April 28, 1955, was adopted in pursuance of the Act of August 19, 1953, P. L. 1136, sec. 13, 24 PS §10-1075, and the resolution of July 12, 1956, in pursuance of the Act of June 1, 1956, P. L. (1955) 1948, sec. 2, 24 PS §10-1075. Paragraph 9 of the complaint avers that the increases violate article III, sec. 13, of the Pennsylvania Constitution which provides as follows:

"No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

Defendants have filed preliminary objections in the nature of a demurrer. They maintain that the complaint fails to set forth a cause of action since paragraphs 4, 5 and 6 thereof indicate that the salary of the superintendent was established by *resolution* and

that the constitutional prohibition as set forth in paragraph 9 of the complaint relates only to "law" and not to resolutions of school districts.

Defendants point to the Public School Code of March 10, 1949, P. L. 30, art. XI, sec. 1151, 24 PS §11-1151, as the basic authority for their action. The pertinent part of this act provides as follows:

"The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so. . . ."

This statute is attacked by plaintiffs on the ground that it violates article III, sec. 13, of the Constitution of Pennsylvania, supra. It is clear that this act did nothing more than vest discretionary power in local school districts; it did not impose upon school boards a *mandate* to increase salaries. It is this distinction which in our view removes the legislative action from the constitutional provision for the reason that it is not a law which requires increases in salaries after the election of a superintendent. We might note at this point, and it is admitted by both counsel, that the superintendent is a public officer within the meaning of the Constitution. See Richie v. Philadelphia, 225 Pa. 511.

Plaintiffs have pleaded that the increases arose by virtue of "resolutions" and defendants contend that consequently the action of the school district was not a "law" within the meaning of the constitutional provision. We believe that this position must be sustained.

The Supreme Court was called upon to define the term "law" with respect to the provision of the Constitution in Baldwin v. City of Philadelphia, 99 Pa. 164. In that case the council of the City of Philadelphia by ordinance increased the salary of the chief engineer of

highways during the term for which he was elected. The court, referring to the constitutional provision, held:

". . . The word 'law' has a fixed and definite meaning. In its general sense it imports 'a rule of action'; in the particular sense in which we are now considering it, it means, 'a rule of civil conduct, prescribed by the supreme power in the state, commanding what is right, and prohibiting what is wrong.' Blackstone. A law is an emanation from the supreme power, and cannot originate elsewhere. It is a rule which every citizen of the state is bound to obey.

"The ordinance of councils by which the plaintiff's salary was increased is not a law, and therefore does not come within the constitutional prohibition. It is a mere local regulation for the city of Philadelphia. It has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law."

In further defining the meaning of the term "law" the court also used this language: "There is nothing in the article, even by implication, that would justify us in extending the word 'law' to the ordinances of a city." We can find no decision which has overruled this early interpretation nor do we regard the difference between an ordinance and resolution as material.

In 1919 the Superior Court in Sefler v. Borough of McKees Rocks, 72 Pa. Superior Ct. 81, was called upon to construe an ordinance which reduced the compensation of a tax collector. The per curiam opinion of the court sustained the holding of the lower court that the prohibition of the Constitution refers to acts of the legislature and not to ordinances of municipalities.

The rule of Baldwin v. Philadelphia, supra, was followed in McCormick v. Fayette County, 150 Pa. 190; County of Crawford v. Nash, 99 Pa. 253; Davis v.

Homestead Borough, 47 Pa. Superior Ct. 444; McKinley v. Luzerne Township School District, 383 Pa. 289.

Plaintiffs urge that resolutions of the school district should not be interpreted in the light of Baldwin v. Philadelphia, supra, and the appellate court cases decided subsequent thereto, for the reason that the Commonwealth allocates certain funds to local districts. No authority is cited in support of this proposition and we cannot perceive why a resolution of a school district should approach the level of law within the meaning of the Constitution for the reason that the legislature makes funds available for specific uses and purposes.

The only salary limitation imposed upon East Penn Union School District at the time of the election of its superintendent was the Act of August 19, 1953, P. L. 1136, sec. 13, 24 PS §1075, which prescribes the minimum salary which must be paid to superintendents of the third class. The increase of $1,000 granted Mr. Stoudnour on April 28, 1955, was, therefore, not under the provisions of this act as pleaded by plaintiff, but by virtue of a resolution of the board which derives its authority to fix salaries from the Public School Code of March 10, 1949, P. L. 30, art. XI, sec. 1151, 24 PS §11-1151, set forth above. Likewise, the resolution of July 24, 1956, granting a salary increase was under the same act rather than by virtue of the Act of June 1, 1956, P. L. (1955) 1948, sec. 2, 24 PS §10-1075, which prescribed a minimum salary to be paid by the board of school directors upon the election of a district superintendent.

Plaintiff finally contends that the board is barred from rendering increases during the term for which its superintendent was elected under article 3, sec. 11, of the Constitution, the pertinent portion of which provides that no bill shall be passed giving any extra compensation to any public officer, servant, employe, agent or contractor after services shall have been

rendered or contract made. It is urged that the superintendent is under a contract and that consequently an increase cannot be granted during the term for which he was elected. Plaintiffs have failed to plead this matter but since the question was raised at oral argument and in the brief, we will dispose of the question. We find no difficulty in determining that district superintendents are not subject to contracts. The legislature has chosen to exclude superintendents from the definition of "professional employe" who are placed under contracts as required by the Act of May 14, 1949, P. L. 1365, sec. 2, 24 PS §11-1101. Moreover, the oath of office prescribed for superintendents (Act of September 29, 1951, P. L. 1572, sec. 1, 24 PS §10-1004) is the same as that prescribed for school directors and is in no way indicative that the superintendent is under *contract*. Sections 1001 and 1071 of the Public School Code of March 10, 1949, P. L. 30, art. X, 24 PS §10-1001, provide for the *election* of a superintendent. No authority has been called to our attention which would indicate that for these purposes the district superintendent is under a contract and consequently article 3, sec. 11, of the Constitution is not applicable. Even if the district superintendent were regarded as being under a contract, it must be recognized that since he was elected subsequent to the effective date of the Public School Code of March 10, 1949, P. L. 30, art. XI, sec. 1151, 24 PS §11-1151, the provisions of the legislation authorizing salary increases are incorporated into such a contract and consequently no extra compensation is being given by virtue of any contract which might be in force.

We conclude that plaintiffs have failed to set forth a cause of action and the demurrer must be sustained.

### Order

And now, March 25, 1957, defendants' demurrer is sustained and the complaint dismissed.