## Creitz v. Palmerton

*Sidney R. Webb*, for plaintiff.

*Roger N. Nanonic*, for defendant.

CAMPBELL, P. J. (Specially Presiding), July 14, 1960. . . . This case stated raised this one legal question, to wit: The legal effect of the action taken by defendant school board at its meeting held on June 3,

1958, in reducing the commission of the tax collector from 3 percent to 2 percent for collections made prior to penalty period.

The statutory authority for the school district to fix the compensation of the tax collector for the collection of school taxes is found in the Local Tax Collection Law of May 25, 1945, P. L. 1050, sec. 35, 72 PS §5511.35. This act reads as follows:

"The tax collector in boroughs and townships of the second class shall receive, as compensation for the collection of county, institution district, borough and township taxes, a commission on all such taxes to be fixed by the respective taxing authorities levying such taxes, not exceeding five percentum of the amount collected. In the case of school district taxes, the commission or compensation of the tax collector shall be determined by the board of school directors, and the total cost of such collections shall be reported annually to the Superintendent of Public Instruction, and shall be published in his report."

This act provides further that the tax collector shall be allowed actual and needful expenditures for printing, postage, books, blanks, forms, etc.

The Township of Lower Towamensing is a second class township, and for this reason we believe this statute applicable. On this point, we desire to call defendant counsel's attention to the fact that we do not believe that the section of the Public School Code of 1949, being the Act of March 10, 1949, P. L. 30, article VI, paragraph 659, 24 PS §659, is pertinent in this case. It is the opinion of the court that this particular section applies only to first class school districts, and it is admitted in this case stated that the Palmerton Area School District is a third class school district.

It cannot be contended that article III, sec. 13, of the Constitution of Pennsylvania would prevent the

action of the school district. It has been held that this section regarding the increasing or diminishing of the salary of a public officer applies to a law which means an act of the legislature and does not pertain to an action by any municipal or local authority: McKinley v. Luzerne Township School District, 383 Pa. 289; Baldwin v. City of Philadelphia, 99 Pa. 164; County of Crawford v. Nash, 99 Pa. 253; McCormick v. Fayette County, 150 Pa. 190; Sefler v. Borough of McKees Rocks, 72 Pa. Superior Ct. 81.

If the resolution of defendant school district dated June 3, 1958, is illegal and void, it must become so as a result of a statutory prohibition. Plaintiff points to the Act of May 25, 1945, P. L. 1050, which was added by the Act of May 16, 1951, P. L. 315, sec. 36.1, 72 PS §5511.36a. This act reads as follows:

"When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted at least ten days prior to the last day fixed by law for candidates to withdraw their names from nomination previous to the day of municipal election."

There is no doubt that this last quoted statute pertains to the Local Tax Collection Law for the amendatory Act of May 16, 1951, specifically states that the Act of May 25, 1945, P. L. 1050, is amended by adding thereto immediately following section 36, the new section which is above quoted.

In the case of Bacak v. Kendig, 4 D. & C. 2d 118, the school board reduced the tax collector's commission from 2½ percent to 2 percent. The action of the board was taken less than 10 days prior to the date when a candidate for the office of tax collector could withdraw from the primary election, and the

court held that this was in direct violation of section 36.1 of the Local Tax Collection Law of May 25, 1945, P. L. 1050, as amended. The only difference between the Bacak case and the instant case is that, in the former case, a reduction in dollar amount of compensation resulted from the decrease in commission rate. In the instant case, we have the unusual situation, where in spite of reduction of commission rate from 3 percent to 2 percent, it is admitted that the tax collector did receive for the collection of taxes during 1958, at the reduced rate, the sum of $983.12, when the collector did receive for the collection of the 1957 taxes at the rate of 3 percent the amount of $843.86. In other words, in spite of the reduction in commission rate, the compensation of the tax collector in dollars was more in the year following the action of the school board than the year prior thereto. This unusual situation was brought about by the county reassessment program which increased the assessed valuation for tax purposes in the township from $883,780 in the year 1957 to $1,789,074 in the year 1958.

Counsel for defendant points out that in section 35 of the local tax collection law, it is stated that the *commission or compensation* of the tax collector shall be determined by the board. Then in section 36.1 of the amendatory act it states that the taxing authorities, when they propose to either raise or reduce the *compensation or salary* for the office of elected tax collector, must do so prior to a specified time. From this, counsel for defendant advances the ingenious argument that, since the amendatory act does not use the word "commission", but on the contrary uses the word "compensation" or "salary", a change in commission could be made so long as it did not increase or decrease the compensation or salary for the office. The act is silent on raising or reducing rates or *commissions* and uses the words *"compensation" or "sal-*

*ary*". From this, he argues from the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, that such words shall be construed according to the rules of grammar and according to the common or approved usage and that, in construing the intention of the legislature, it must be borne in mind that the legislature tends to further the public interest against any private interest. He further argues that the word "compensation" means remuneration and that it indicates the resultant dollar amount rather than any percentage of any unknown. The court must admit that this argument is quite persuasive, and, in a technical sense, the words "commission" and "compensation" are not exactly synonymous. The word "compensation" would appear to be a broader term and more inclusive.

Notwithstanding this argument, the court is of the opinion that this strict interpretation of section 36.1 is not what the legislature had in mind when the act was passed and, furthermore, if the act were so construed, it would lead to an impossible situation.

"The obvious reason for this amendment was to appraise candidates of the salary the winner would receive if elected, and thus enable candidates to withdraw their names from nomination and election if they believed the (new) compensation or salary was inadequate or unfair. Under the aforesaid amendment it is clear that the *taxing authorities* could not change the compensation or salary for the office of tax collector subsequent to the ten day period fixed by law for candidates to withdraw their names from nomination": Myers v. Newtown Township School District, 396 Pa. 542.

We do not believe the Supreme Court in using the word "salary" and "compensation" in this case would rule out the word "commission". This case involved

a situation where the school board actually paid a salary to the tax collector instead of having his compensation determined by a percentage of the collections.

A school board has two choices in determining the actual resultant dollar amount which any tax collector is entitled to receive. First, if they are interested in exact dollar amount without any variation, they may choose to compensate a tax collector by a salary. There would appear to be no question under section 36.1 that this salary could not be changed subsequent to 10 days prior to the primary election. On the other hand, the school district may choose to compensate the tax collector by setting a commission on the amount of taxes actually collected. It may have good reason to do so. It may feel that this will be an incentive for the tax collector to be diligent in the collection of taxes. It may gamble on the fact that the assessed valuation may be reduced or upon the fact that collections will be poor in which event they will only have to pay the commission on the amount which the tax collector actually collects. If this method of compensation is elected by the school district, it is impossible to say with exactness just what dollar amount the tax collector will earn. A tax collector may earn more than the school board anticipates or on the other hand, he may earn less. The school board has full knowledge that changes may take place in assessed valuation when they choose to set the tax collector's compensation on the basis of a commission of collections. From the tax collector's point of view, when running for office he may anticipate a new development in a community which will increase substantially the assessed valuation. He may have gambled on the fact that the new assessment law would increase the assessed valuation on the properties in the township and he ran for office knowing that he would receive 3 percent of

the amount of taxes which he collected prior to the penalty period. What remedy would the tax collector have, in this instance, if the assessed valuation of the township diminished by 50 percent? Would the school district be eager to increase the tax collector's commission on collections in order to keep his ultimate dollar and cents compensation similar to that of previous years? If they have this in mind, we would submit that they should have adopted a salary for the tax collector in lieu of compensating him through commissions. We feel that the tax collector would have great legal difficulty in compelling the school district to increase his rate of commissions on collections in the event of a substantial reduction in assessed valuations in light of the case of Meyers v. Newtown Township School District, supra. The court there indicated that the right to seek additional compensation by a tax collector would be a precedent to open up a "Pandora's box" and permit many elected officials to bring a similar post-election suit and ask the courts for an increase in salary or compensation. When a school district elects to compensate its tax collector on a commission basis, they should be prepared to suffer the bitter as well as enjoy the sweet.

When defendant school district met on June 3, 1958, and passed the resolution, were they interested in just changing the rate of commission of the tax collector or were they interested in reducing the amount which they would have to pay to him for the service of collecting the taxes? The irony of defendant's argument in this case is that one changes compensation by a change in commission rate and if the act prevents the reduction or increase of compensation, how then can you permit the change in commission rate which will result in a change of ultimate dollar compensation to the tax collector.

Defendant argues that in this case the actual dollar compensation of the tax collector was not reduced between the years 1957 and 1958 and on the contrary, even after the reduction of the rate of commission, he still received more actual dollar compensation in 1958 than was received by the collector in the year 1957. You will note in this respect that section 36.1 above quoted does not make a comparison between any two years when it speaks of raising or reducing compensation or salary. It is expected that the dollar compensation received by a tax collector will vary from year to year when compensation is based on a rate of commission for collections. We think that it was the intention of this act to prevent a change in the arrangement which a school district had with its tax collector during the term of his office and that no change can be made in their arrangements regarding the collection of taxes when it is done on a date following 10 days prior to the last day for withdrawing as a candidate prior to the primary election.

There is another reason why we believe defendant's position cannot be upheld. Defendant in this case indicates and admits that it had no right to reduce the compensation, that is, the ultimate dollars and cents amount which he would receive. Defendant points out that the tax collector earned more dollars and cents in 1958 than his predecessor did in 1957, but we call defendant's attention to the fact that this section in this act of assembly also prevents a raise in compensation. If defendant's argument is sound with respect to the fact that they did not decrease his compensation, then it should be equally sound in that they could not raise it and in this instance, it is admitted that he did receive more based on the very resolution which it contends is valid.

If we refuse to allow plaintiff to recover in this instance, then we feel that litigation will arise in

every instance where the assessed valuation would be changed or where the millage levied might be increased or decreased, for under this method of compensation the tax collector will seldom ever receive the same dollars and cents compensation in any two successive years.

We are not unmindful of the windfall by which the tax collector will benefit. It was an action over which neither he nor the school district had any control. We do not criticise defendant school district but on the other hand we would commend them for doing what they in good conscience felt should be done. On the surface, the equities involved may appear to be in favor of defendant school district but we must be mindful that hard cases often make bad law. Plaintiff will receive in this case $491.54 more for collecting school taxes during the year 1958 and $494.50 more for their collection during 1959 and possibly a like amount during the remaining two years of his term. We do not feel that this would warrant equity intervention as was done in the McKinley case, supra. See also Mason v. Hanover Twp. School District, 242 Pa. 359. We do feel that a court of equity would have the power on a taxpayers' bill to grant relief in the event of extreme hardship but such does not appear to be here involved and we are not in equity in this case.

We therefore conclude that the action of defendant school district on June 3, 1958, in reducing the commission of plaintiff is illegal, void and of no effect.

Accordingly, we enter the following

### Order

And now, July 14, 1960, judgment is entered for plaintiff and against defendant in the amount of $986.04.

And now, July 14, 1960, an exception is noted and bill sealed for defendant.