## Participation By Public Officials In Non-Contributory Prescription Drug Plan

P. W. BROWN, First Deputy Attorney General, and SATINSKY, Deputy Attorney General, August 30, 1974.—You have asked whether elected and appointed officials of the Commonwealth may participate in a noncontributory prescription drug plan which has been approved by the Executive Board for management employes, or whether the participation by these officers in the program would violate article III, sec. 27, of the Pennsylvania Constitution. The program calls for the Commonwealth to subsidize the purchase of prescription medicines in much the same way as it already defrays the cost of Blue Cross/Shield and group life insurance benefits for these officials and other noncontractual and contractual State employes.

It is our opinion, and you are so advised, that such a program does not fall within the prohibition of article III, sec. 27, of the Pennsylvania Constitution and State officials may participate in the program and receive benefits thereunder.

Article III, sec. 27, states:

"No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

With regard to those noncontractual employes who are public officers, their right to receive benefits granted by the Executive Board without running afoul of the constitutional prohibition is contingent upon

two separate questions. First, we must determine whether the benefits in question are "salaries or emoluments" of office. Assuming they are, we then must decide whether the action taken by the Executive Board in granting those increases constitutes the type of action which would be precluded by section 27.

There can be little doubt that the Commonwealth's payment of premiums for eligible recipients has a dollar value to those enrolled in the program and that it increases the "emoluments" of a beneficiary. In Black's Law Dictionary, Revised 4th Edition, 1968, "emolument" is defined as "[t]he profit arising from office or employment; that which is received as a compensation for services, or which is annexed to the possession of office as salary, fees, and perquisites; advantage; gain, public or private." Furthermore, as stated in Sellers v. Upper Moreland Township Sch. Dist., 385 Pa. 278, 282 (1956), "[t]he constitutional provision forbidding an increase in salary or emoluments of a public officer during the term of office is inexorable and may not be avoided by indirection."

A host of cases have manifested agreement with this interpretation. For instance, a law which relieved a tax collector from the obligation to pay the premium on his bond was labeled as an emolument in Sellers, supra; a law increasing the expense accounts of county commissioners in an amount grossly disproportionate to their actual expenses was held to be an emolument in Loushay Appeal, 169 Pa. Superior Ct. 543 (1951), affirmed, 370 Pa. 453 (1952); and the right of a sheriff to maintain his residence in a county jail was considered an emolument in Commonwealth v. Elliott, 40 D. & C. 665 (1941). See also Apple v. Crawford Co., 105 Pa. 300 (1884), and Berks Co. Inst. Dist. v. Schoener, 383 Pa. 210 (1955).

As stated previously, however, the characterization

of prescription benefits as an increase in emoluments for public officers is not determinative of the overriding issue. In order to pass upon the legality of the proposed benefits as they affect public officials, we also must decide whether the resolution adopted by the Executive Board constitutes a "law" within the context of section 27.

Before subjecting the benefits in question to the second phase of our two-pronged examination, we must understand the composition and overall responsibilities of the Executive Board. The board is a statutorily created body consisting of the Governor and six members of the Cabinet chosen by the Governor whose duties include, among others, standardizing employment conditions for all State employes, arranging the structure of the executive branch, approving extra compensation in certain instances, determining the hours of employment and vacation time, promulgating rules defining reimbursable expenses, designating those persons who must give fidelity bonds or have surety bonds executed on their behalf, approving branch offices of administrative agencies, prescribing the levels of liability insurance which must be maintained by the Commonwealth for its officers and employes, and regulating the purchase and use of vehicles by the Commonwealth: Administrative Code of 1929, April 9, 1929, P. L. 177, as amended, sec. 709, 71 PS §249. Within these boundaries the General Assembly has entrusted the board with the duty to assess the performance of the diverse segments of the executive branch and to establish uniform rights and rsponsibilities that will best promote the transformation of the divergent and seemingly disparate fragments of State government into an integral whole.

It is against this background that the constitutional provision must be construed. As the discussion below

indicates, the main thrust of sec. 27 is to prohibit the legislature from interfering in the conduct of public officers.[1] The leading case in point is Baldwin v. City of Philadelphia, 99 Pa. 164 (1881), where the ordinance of city council altering the salary of the city's chief commissioner of highways was deemed not to conflict with article III, sec. 13, the forerunner to article III, sec. 27, of the Pennsylvania Constitution. The ordinance was held to be a mere local regulation which "has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law." This conclusion has been cited time and again and remains as valid precedent. See Sefler v. McKees Rocks Boro, 72 Pa. Superior Ct. 81 (1919); Davis v. Homestead Boro, 47 Pa. Superior Ct. 444 (1911).

Although no case specifically addresses the problem raised here, where the Executive Board is the authority responsible for effectuating the change in employment

---

[1] The language of Article III, sec. 27, should be contrasted with comparable provisions in the United States Constitution, where one of the primary concerns evidenced was that the officers in question should have only one source of income, whatever that source. Furthermore, the proscription against changing that level of compensation was all-encompassing, rather than being limited solely to action by the Congress.

Article II, sec. 1 [7] states:

"The President shall . . . receive for his Services, a Compensation, which shall neither be increased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them." (Emphasis supplied).

Article III, §1, states:

". . . The Judges . . . shall . . . receive for their Services a Compensation, which shall not be diminished during their Continuance in Office." (Emphasis supplied.)

conditions, two cases did confront similar situations in which the Legislature delegated to some other entity the responsibility for adjusting salaries of public officers. In McCormick v. Fayette Co., 150 Pa. 190 (1892), the court announced that the salary of the Fayette County sheriff could be changed after his election to office without violating the constitutional prohibition, since the power to allow from time to time such sums (not exceeding a limit set by the legislature) to be paid as a per capita fee for the boarding of prisoners had been vested in the court of quarter sessions by the General Assembly, and section 13 of Article III "is a limitation upon the power of the legislature, and upon that alone . . . The word 'law' . . . has a fixed and definite meaning, and as here used applies only to Acts of the legislature."

In much the same vein is Emmaus Taxpayers' League v. East Penn Union School District, 12 D. & C. 2d 103 (1957), where a series of resolutions passed by the board of school directors increasing the salary of the superintendent was deemed to be constitutional. As in McCormick, the court held that by vesting in local school districts the discretionary power to change salaries, an Act of Assembly did not *mandate* an increase in salaries, and the legislative action thereby was removed from the constitutional provision.

As expressed throughout these cases, and as developed more fully below, section 27 is designed to safeguard the principle of Separation of Powers. Whether the evil to be avoided is the promise of monetary gain in exchange for political support or the threat of financial ruin absent political capitulation, the subject of the prohibition remains the General Assembly, and it is the conduct of this body, and this body alone, which is circumscribed by section 27. The power delegated to the Executive Board, like the authoriza-

tions granted in McCormick and Emmaus, insulates this body from undue legislative interference. Accordingly, the same result must obtain here.

The basis for our reading of section 27 stems not from historical accident but from a thorough analysis of the intent of the framers, as reflected below.

"The purpose of the framers of the Constitution in placing limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the incumbents of office after they had been elected or appointed: 8 Deb. Pa. Const. 332, 333": Hadley's Case, 336 Pa. 100, 105 (1939).

"If the ordinances of a city are not laws within the meaning of this clause in the Constitution, much less so are the orders or agreements of the county commissioners and county auditors in regard to the treasurer's salary. The obvious meaning of the Constitution is, that the General Assembly should regulate—that is, ascertain and establish—the compensation which should be paid to the respective county treasurers, and that thereafter 'no law'—that is, no Act of Assembly, should increase or diminish their respective salaries during the term for which they were elected": County of Crawford v. Nash, 99 Pa. 253 (1881).

See also, Opinion Attorney General No. 30 (June 5, 1974), 4 Pa. B. 1296; 1 Journal of Proceedings of Pa. Commission on Constitutional Amendment and Revision 74 (1920).

The distinction between acts passed by the legislature and those actions with legal effect taken by other governing bodies was also manifested in the 1873 Debates concerning judicial salaries: 8 Debates of Pa. Constitution 397 et seq. These discussions underscore the fact that the salaries paid to judges by the

State were not the sole source of income for judges and were often supplemented by funds from the county treasuries. Both article V, sec. 18 of the Constitution of 1874[2] and article V, sec. 16(a) of our current Constitution[3] are illustrative of more stringent Constitutional prohibitions against modifying salaries and indicate by contradistinction the limited scope of article III, sec. 27.

In this context, it is clear that the extension of prescription benefits to public officers by the Executive Board is not the type of action at which section 27 was directed. In contrast with the potentially unbounded discretion of the legislature, the Executive Board at one and the same time has its regulatory powers derived from and prescribed by the Administrative Code. To the extent that this board is bound by well-defined law, the likelihood of abuses is reduced proportionally. To the extent that additional restraints become necessary, supplementary legislation can be provided. In either event, the Executive Board is distinct from the General Assembly, and the admonitions of the framers in regard to article III, sec. 27, do not apply to it.

[2] "The judges of the Supreme Court and the judges of the several courts of common pleas, and all other judges required to be learned in the law, shall at stated times receive for their services an adequate compensation, which shall be *fixed* by law, and paid by the *State*. They shall receive *no* other compensation, fees or perquisites of office for their services from *any* source, nor hold any other office of profit under the United States, this State or any other State." (Emphasis supplied.)

[3] "Justices, judges and justices of the peace shall be compensated by the *Commonwealth as provided by law*. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth." (Emphasis supplied.)

[4] The Attorney General, being directly affected by this opinion, took no part in its preparation or issuance.

Finally, we should recognize that in its deliberations during 1971 and 1972, the Commonwealth Compensation Commission took cognizance of the power of the Executive Board to fix uniform leave policies governing department heads, and arrived at its final recommendations on the premise that the Executive Board, not the Commission, was responsible for adjusting employment conditions. In the past, the board has used this authorization to grant hospitalization and life insurance benefits to non-contractual and contractual employes alike. Contractual employes already receive prescription benefits, and the decision reached by the Executive Board to extend these benefits to public officers in the same manner they will be provided to other non-contractual employes is intended to provide an inducement which will help attract from private industry and keep in the ranks of government public servants of high quality. The result is not only necessary but completely harmonious with the intent of the Commission and of the framers.[4]

Pursuant to section 512 of the Administrative Code of 1929, 71 PS §192, we have sought the comments of the Treasurer and Auditor General and are advised that they concur in our conclusions.